## LOYAL FRIENDS OF AMERICAN BENEV. ASS'N v. CENTER.
### No. 11014.

Court of Civil Appeals of Texas. Dallas.
April 30, 1932.

B. F. Gafford, of Sherman, for appellant.
W. J. Durham, of Sherman, for appellee.

VAUGHAN, J.

Appellee filed this suit March 4, 1930, and the amendment on which it was tried September 23, 1930, to recover damages on account of the alleged breach by appellant, on September 15, 1929, of two certain benefit certificates issued by it to appellee. Judgment was rendered in favor of appellee on December 31, 1930, for $825, with interest and costs of suit, from which this appeal was duly prosecuted. Appellant, a fraternal benefit association duly incorporated under the laws of and maintaining lodges in the state of Texas, issued to appellee a benefit certificate on November 11, 1922, for $500, payable at her death to the beneficiaries named therein, and, in addition thereto, said certificate provided for the payment of a sick benefit to appellee in the sum of $3 per week. For this certificate appellee was required to pay monthly dues in the sum of $1.25, and on February 5, 1926, issued to ap-

pellee a burial certificate providing for the payment of "a sum not exceeding $75 to the relative of appellee named in said certificate." On this certificate appellee was required to pay annually $1.50 as dues. Following is a synopsis of the provisions of appellant's by-laws and regulations, constituting a part of said certificates, material to the disposition of this appeal:

"(a) If the comrade named in any certificate has complied with all by-laws, Constitution, rules and regulations, of this (order) * * * which shall be in force at the time of death of such comrade (this association) will cause to be paid to the relatives named in said certificate a portion of the burial relief which may be on hand to the credit of such fund not exceeding the sum of $200, within 24 hours after receipt of said proof of death * * * the balance which * * * not exceeding $300 * * * shall be payable in the annual meeting of the Grand Lodge held on the second Tuesday in July next following the death of said comrade.

"(b) Special burial benefit certificates in an amount not exceeding the sum of $75 may be issued to any comrade in good standing * * * dues to be $1.50 per year, payable in advance. * * * If the holder of such * * * certificate has complied with all laws, rules, Constitution and regulation of the said (association) is in good standing financially, said order will cause to be paid to the relatives named in said certificate a sum not exceeding $75.

"(c) Each member shall receive $3 per week during the time they are sick in bed and have a doctor attending them. When a member is sick and needs the attention of his comrades, the chairman of the sick committee must be notified * * *. A financial member cannot be sustained during the time they are sick and disabled. Their dues shall be paid out of their weekly benefit money. The sick benefit is to be paid regularly by the Sick Committee until convalescence or death, and payable every week commencing at the date when the Sick Committee was notified and a doctor's certificate presented.

"(d) When a member fails to pay his or her local dues on or before the 15th day of the month for which same are due, such member shall be considered non-financial and shall not be thereafter entitled to any benefits under any certificate and under any local lodge or Palace, and also under the National Grand Lodge and Palace, and all of which rights shall be forfeited until such member has paid all delinquent dues of every character.

"(e) Any member who has been suspended for non-payment of dues in a Lodge * * * may be reinstated by paying what he or she owes, providing they have not been non-financial for 12 months; if they have been out for 12 months or more, they may join as a new member."

Appellee in part alleged that she had "complied strictly with the terms of said certificates of insurance * * * and had at all times obeyed and complied with the rules, laws and regulations of defendant corporation from the date she became a member until the filing of this suit * * * that she had paid all premiums and assessments due upon said certificates of insurance up until September 15, 1929, but notwithstanding such facts, defendant, on or about September 15, 1929, acting through its agents, Hattie Bruce and J. R. Patterson, arbitrarily, maliciously, wrongfully and illegally suspended or expelled plaintiff, or caused plaintiff to be wrongfully and illegally suspended as a member of defendant corporation, and illegally cancelled her policy or policies of insurance, or caused the same to be illegally cancelled, to plaintiff's damages in the sum of $575."

In addition to the above sum, appellee claimed damages in the sum of $399, as the amount of sick benefits that accrued to her on account of 133 weeks of continuous illness during the period of time dating from June 27, 1928. Other sums claimed as damages on account of said alleged breach of contracts we find it not necessary to consider, same not being in any respect embraced within the provisions of either of said certificates directly or indirectly as a benefit contracted to be received by appellee. Appellant's answer on the merits consisted of a general denial, a special plea, denying that it had canceled any policy or certificate now held or heretofore held by the appellee, and denied that the local lodge at Sherman, Tex., of which appellee was at one time a member, had ever canceled her membership in such local lodge or palace, and further alleged: "That plaintiff has failed to pay her lodge dues and her Grand Lodge dues and became non-financial and in bad standing both with the local lodge and palace, and with the defendant corporation, long prior to giving any notice of her physical condition to the officials of the local lodge as prescribed by its Constitution and by-laws and the rules and regulations of such association."

Following are the special issues submitted to and answers made thereto by the jury, viz.:

"(1) Was the plaintiff sick or disabled on September 15, 1929? Answer: Yes.

"(2) Did the sick committee of the Lodge in question or any of its officers have knowledge of the facts of disability, if any, of the plaintiff on September 15, 1929? Answer: Yes.

"(3) What amount of money, if any, will fairly and reasonably compensate plaintiff for damages, if any, she has sustained by rea-

son of defendant's cancellation of her insurance policy, if it did so cancel it? Answer: $825."

On this verdict the judgment appealed from was rendered. Appellant requested the following special issues which the trial court refused to submit, viz.:

"Did the defendant Grand Lodge cancel the policies of the plaintiff?

"(2) After August 15, 1929, and on or before September 15, 1929, did plaintiff pay the defendant order dues for the month of September, as a member of the defendant organization?"

Special issue No. 1 refused by the court presented a vital matter for determination by the jury, and which was not contained in the special issues submitted, viz. whether or not appellant canceled the policies of the appellee. The pleadings of the parties clearly presented this matter for determination, and there was evidence pro and con introduced. In addition to this situation, appellee failed to allege acts on the part of appellant or any of its officers that, if taken as true, would have, under its by-laws and regulations, amounted to the illegal suspension or expulsion of appellee. Article 11, sections 1 to 4, inclusive, by-laws and regulations of the subordinate lodge, of which appellee was a member, defines the grounds upon which a member may only be expelled, creates a nisi prius and appellate tribunals for the hearing of charges made for that purpose, and prescribes the course of procedure to be observed by such tribunals. Said provisions are exclusive, therefore the acts and conduct on the part of Hattie Bruce and J. R. Patterson, as alleged by appellee, supra, did not have the effect to expel appellee from appellant's order, as appellee could only be expelled as the result of a trial provided for by said article 11, supra. However, we do not intend to be understood as holding that the alleged unauthorized acts on the part of Hattie Bruce and J. R. Patterson, if established, could not become binding upon appellant by and through its ratification thereof. As to the suspension of appellee, appellant alleged that she became suspended on September 15, 1929, by her failure to pay dues as provided by section (d) of appellant's by-laws, supra. Special issue No. 2, refused, properly presented this phase of the case for determination by the jury.

By the three issues submitted the court assumed, as a fact, established without contradiction in the evidence, that appellant had wrongfully suspended or expelled appellee, in that she, after August 15, 1929, and on or before September 15, 1929, paid appellant order dues for the month of September 1929, a vital issue necessary to be determined in favor of appellee in order for her to recover on and because of the beneficiary fund of $500 and

burial fund of $75 upon which there was evidence pro and con before the jury, which would support a verdict on that issue in favor of or against either litigant. The trial court instructed the jury in reference to special issue No. 3 as follows:

"For your guidance in answer to this question, you are instructed that you will take into consideration the face value of the policy, and such health and sick benefits, if any, she would have received from the 15th of September, 1929, to date, and such health and sick benefits, if any, she would reasonably be expected to receive in the future had not such policy of insurance been cancelled, less the amount of grand lodge and local dues she would be required to pay during the remainder of her life had such policy remained in force, and not been cancelled, and in computing the amount of money that plaintiff would pay in the future in the way of dues, you are instructed to take into consideration her present age, and the condition of her health and her life expectancy, together with compound interest on the dues and assessments that she would have been required to pay on such policy of insurance during the remainder of her life, if such insurance policy had not been cancelled.

"You are further instructed in computing the amount of sick benefits you will take into consideration the loss of time from plaintiff's regular occupation by reason of being sick in bed and attended by a physician. The term 'sick in bed and attended by a physician' does not mean to be continuously confined in bed, or constantly attended by a physician, but it means where a person is confined to bed and attended by a physician a substantial portion of the time."

This was given, not so much in explanation of said issue, as to direct the jury in the matter of applying the evidence introduced on and as to the value of the benefit certificates at the time same were alleged to have been breached, for the purpose of ascertaining the amount of damages that resulted and was sustained by appellee on account thereof. This charge is erroneous for the following reasons: (a) Assumed, in the absence of evidence thereto, that appellee, during the period of her life expectancy, would in all probability suffer illness that would confine her in bed, require the attendance of a physician for an appreciable length of time at different intervals; (b) assumed liability to exist in favor of appellee against appellant for the loss of time by appellee from her regular occupation by reason of her illness, when such liability, neither by expressed terms nor by necessary implication, existed in any respect by virtue of the language of said certificates; the only indemnity secured to appellee on account of sickness being that provided for by section C, supra.

As to the measure of damages, we think the rule applicable to the case presented by the pleadings and the benefit certificates declared upon to be the value of the certificates at the date of their alleged breach. By what method should this value be determined is a question of no small import. The fixed amount of the two certificates, aggregating $575, would have been the full value of said certificates if in force at the date appellee shall have died. Therefore that sum, for the purpose of this suit, represents the gross amount of the benefits that would have accrued under and by virtue of said certificates in the fullness of time as to their maturity, but for the alleged breach thereof. Appellee, during the period of her life expectancy, in order to keep said certificates in force, would have been required to pay to appellant on the first certificate $1.25 per month, and on the second certificate $1.50 per year, as dues. As to the dues theretofore paid, no account may be taken, as same had served the purpose for which said payments were made —had kept said certificates in force up to the date of their alleged breach. As to the dues that appellee would have been required to pay during said period of life expectancy, appellant would have received, not only the payments, but the revenue that would have resulted from the use of the money so paid. Such earnings we think should be determined by calculating interest on each payment of dues so made from date of payment at the legal rate of 6 per cent. per annum to the end of the date of the period of life expectancy. This total interest sum, plus the aggregate amount of dues that would have been paid during said period of expectancy, should be deducted from the fixed sums of said certificates aggregating $575; the remainder representing the value of the certificates at the date of breach plus the sum appellee would be entitled to receive, if any, as sick benefits. As to this feature of the case, we are of the opinion that the rule applicable thereto is that for all benefits that had accrued prior to the breach of said certificate, or that would accrue after such breach on account of illness contracted by appellee prior thereto, as well as for the period of time that same would probably continue after the rendition of judgment, would be the total amount that appellee would be entitled to recover under the present state of the pleadings. Any further sum on account of anticipated illness during the period of life expectancy would be at best based upon an additional legal fiction, viz. that appellee would probably suffer at different intervals attacks of illness lasting for and during certain definite periods of time, so as to secure to appellee sick benefits under the provision of section (c), supra, during her period of life expectancy. This would be unduly presuming a liability upon a presumption; in other words, a presumption upon a presumption. Under the record of this case, to so pyramid presumptions would present an illogical inconsistent situation, viz. the presumption of life expectancy for a definite period of time, and the presumption that during that period of time appellee would become sick at different intervals to such an extent as to be confined in bed and require the care of a physician for definite periods of time. This we think would be a legal fiction of rank absurdity, not justified in any respect in order to provide a remedy for the protection of a substantial right, or to prevent the infliction of a wrong.

Appellant offered in evidence the following letter, viz.:

"Sherman, Texas, June 13, 1929.

"Mrs. Bruce, dear Comrad: I am sorry I am not able to be with you all as I cannot walk now. Mrs. Bruce I could not get the summons because I stuck a nail in my foot and could not wear a shoe. Suffered with it 4 weeks. I couldn't pay a fine if I wasn't able to come. Now the Palace owes me 40¢ from April dues and I explained it to Mr. Patterson. I now enclose and you will find Two Dollars and ten cents. $2.10 and the 40¢ makes $2.50 to pay our relief and dues. I will see you and write you soon. Hope the Palace is all right.

"I remain, Comrad Center."

—to the introduction of which appellee objected, on the grounds that "its execution had not been proved and plaintiff had denied writing it, or authorizing it to be written," which was sustained by the court. The evidence clearly established that the said letter was delivered to Hattie Bruce, the party to whom it was addressed, by a messenger related to appellee, in reference to which Hattie Bruce testified as follows: "In June I got a communication from Lena (referring to the appellee) and at that time an investigation was made as to what the lodge owed her. The statement was that it was 40¢ the lodge owed her and she sent $2.10. The boy brought $2.10 and a letter. The letter said we owed her 40¢. At that time I never did talk to her. Just received her statement and she was straightened up. We paid her dues, that is the $2.10 and the 40¢ paid her dues, and the dues of her son, $1.25 a piece, that paid her to June 15th. In July she paid for her son and the lodge paid for her. That kept her in standing and paid her up to August 15th."

Witness further testified: "One of her boys brought that letter to the Palace, I don't remember which one it was, sometimes both of them came together, and sometimes just one would come there and bring it to the doorkeeper and he would bring it to the table, and I would give her credit for it."

Appellee testified as follows: "I heard James Ross testifying in reference to my dues. My grandson would carry my dues for

902

me. I was not able to go and I had to depend on him to take them there. All of my dealings with the institution for the past two years have been through my grandson."

Angie Douglas, secretary, testified: "Several times that boy came there and brought money."

Jim Patterson testified in reference to the letter as follows: "This came to the lodge and was presented at the door of the lodge by the grandson to our doorkeeper, and he re-. ceived it and presented it to the secretary of the lodge."

He further testified that, at appellee's request, he and the secretary in June, 1929, investigated the standing of appellee in the lodge; that she claimed the lodge owed her 40 cents, and he reported to her that was true; that the letter came to the lodge after that.

We think the above testimony was sufficient to require the submission to the jury of the issue involving the authenticity of said letter, viz. whether or not it was in fact written by appellee, or by some one acting for her. Because of the errors herein presented, the judgment of the trial court is reversed, and this cause remanded for further proceedings.

Reversed and remanded.