THE NATIONAL LIFE & ACCIDENT INSURANCE COMPANY
v. GROSS.

4-4948

Opinion delivered March 14, 1938.

*Herman Horton* and *Roy Penix,* for appellant.
*Holland & Barham,* for appellee.

HUMPHREYS, J.   This is an appeal from a judgment for $55, penalty and attorney's fee rendered in the circuit court of Mississippi county, Chickasawba District against appellant on a life insurance policy issued by appellant to Elizabeth Jordan on June 29, 1936, which contained a sick benefit clause, in which appellee, the daughter of the insured, was made the beneficiary.

It was alleged in the complaint that the insured died on October 2, 1936, during the life of the policy; that the insured had paid seven cash premiums of 25c a week thereon beginning on June 29, 1936, the last payment being made on August 15, 1936; that prior to August 15, 1936, the insured became ill and was entitled under the sick benefit clause in the policy to $10 for weekly sick benefits which was more than enough to pay the premiums on the policy from August 15, 1936, until her death on October 2, 1936.   The defenses interposed to the action were:

First, that the suit was brought in less than 60 days after the death of the insured contrary to a provision in the policy.

Second, that no proof of death of the insured was ever furnished appellant as provided in the policy.

Third, because appellee brought the suit without giving a bond claiming that she was a nonresident of the state and should have executed a bond before bringing the suit.

Fourth, that the policy was not in force on the date of the death of the insured because same had lapsed for nonpayment of premiums.

Fifth, that under the provisions of the policy the insured was not entitled to sick benefits of $10 or any other sum because the premium payments were in arrears for more than two weeks before she became ill.

(1) The record shows that immediately after the death of the insured appellant, through its superintendent, W. H. Glover, denied liability on the policy, claiming that same had lapsed on account of the failure to pay the cash weekly premium of 25c. After the denial of liability, the 60-day clause in the policy was of course waived and appellee might bring the suit at any time.

(2) Likewise appellant waived the clause requiring proof of death of the insured to be made after its superintendent knew the insured was dead and denied liability on the ground that the policy had lapsed on account of the failure of the insured to pay the premiums.

(3) The undisputed evidence showed that appellee was a resident of Blytheville and not a nonresident of the state at the time she brought the suit.

(4) Appellant contends for a reversal of the judgment because it says that the undisputed evidence shows that the insured only paid four cash premiums of 25c a week, the first payment being on June 29, the second on August 1, the third on August 8 and the fourth on August 15 all in 1936, which payments kept the insurance policy in force until July 27, 1936, and, not thereafter. Appellee contends, however, that the evidence is in dispute as to whether four or seven cash payments were made, and that under proper instructions of the court that issue of fact was submitted to the jury, and appellant is bound by the finding of the jury that seven cash payments were made by the insured to appellant. We think that the evidence as reflected by the record was in dispute on that issue of fact. The policy was executed on June 29, 1936, along with a premium card or book in which the premiums were to be entered as they were paid. A cash payment of 25c was entered therein

as being paid June 29, 1936. The evidence of two witnesses introduced by appellee was to the effect that a few days after the death of the insured W. H. Glover, who was superintendent of appellant, and had been for nine years, and who had delivered the policy and collected the first premium, went to the home of Sidney Jordan, the husband of the insured, and stated the policy had lapsed for nonpayment of premiums and demanded the policy. When Sidney Jordan refused to surrender the policy he asked to see it, the premium receipt book, and such receipts as he had. At the time, four payments of premiums had been entered on the premium book or card three of which payments Glover erased and in lieu thereof entered three payments shown by the receipts as having been made on August 1, 8 and 15, 1936. After making this change or substitution of payments on the premium book or card he let Sidney Jordan keep the policy, the premium card or receipt book and the receipts.

Glover testified that on August 24, 1936, he went to see the insured to collect a premium from her to keep the policy from expiring, and that she said she had no money to pay the premium. She was sick at the time. He said she asked him to enter the payments she had made on the premium receipt book or card, saying that she had lost her receipts, and that in compliance with her request he entered the payments according to his collection book which bore different dates from the dates on the receipts. He admitted that after the death of the insured he erased the dates he had made on August 24, 1936, and substituted payments in lieu thereof bearing the dates of the receipts he inspected which Jordan showed him.

We think the fact that W. H. Glover unnecessarily erased from the premium book or card which showed three premium payments on certain dates and substituted therefor premium payments from the receipts of August 1, 8 and 15, 1936, was sufficient evidence to warrant the jury in finding that the dates of premium payments erased were made in July, 1936, and that the receipts represented different payments from those made in

August. In other words the jury were warranted in finding that seven cash payments had been made by the insured instead of four cash payments as contended by appellant. It was clearly a disputed fact for the determination of the jury, the jury being the sole judges of the credibility of the witnesses and the weight to be attached to their evidence.

(5) There is little or no dispute in the testimony that the insured became ill and took to her bed about the 12th of August, 1936, and that she was confined to her bed until she died on October 2, 1936. Dr. Stephens attended her on August 18, 1936, and Sidney Jordan testified that she had been in bed five or six days before he called Dr. Stephens. There is practically no dispute in the evidence that Dr. Stephens made two reports of her illness to appellant, one on the 18th of August, 1936, and the other about a week thereafter or early in September, and that these reports were mailed by Sidney Jordan to appellant. Appellant admits getting one of them and no one testifies positively that appellant did not get the other one. There is substantial evidence in the record tending to show that the insured became sick at a time when her policy was in full force and effect, and that she met every requirement necessary under the sick benefit clause in the policy to entitle her to $10 under the sick benefit clause in the policy. It follows that appellant should have applied a sufficient amount out of the $10 to pay the premiums due on the policy from and after August 15, 1936, to October 2, 1936, the date of the insured's death.

No error appearing in the record, the judgment is affirmed.