HELLER, HIRSH & CO. v. CHARLESTON PHOSPHATE CO.

1. Where a party by written contract agrees to purchase an article at a stated price, to be paid for on delivery by a note, "accompanied by warehouse receipts for acid phosphate or South Carolina rock, either or both," his contract as to the security is performed only by deposit of warehouse receipts for the identical articles mentioned in the written contract.

2. And the buyer having failed to carry out his contract, the seller had the right to sell the article agreed to be sold, and look to the buyer for any deficiency on such resale.

3. A purchased the property of B, and agreed to pay certain debts of C, scheduled· at $1,530, and C claimed $1,970 on account thereof, and also held another unliquidated claim against B. After dispute, C accepted $1,530 from A, and receipted for it as full payment of all demands whatsoever against B. *Held*, that this was not money paid by a third party, and that it might be shown by parol that the receipt did not operate as payment of the said unliquidated claim.

Before FRASER, J., Charleston, June, 1887.

This action was begun October 11, 1887. The opinion makes a full statement of the case.

*Messrs. Mitchell & Smith*, for appellant.
The security stipulated for was only collateral to the main con-

tract, and, like the penalty of a bond, was intended to secure the performance of the contract. 104 *U. S.*, 90; 1 *Bro. Ch.*, 418; 12 *Ves.*, 282, 475. Here the defendants did the best they could, and offered security of the same general class (fertilizer material), and of far greater value. The security offered was a substantial compliance with the agreement, and the judge should have so charged.

A mere receipt may be explained by parol, but the dispositive part of this instrument was a discharge of the Charleston Phosphate Company from all demands *whatsoever*. The *fact* of payment may be explained by parol, but not the *effect*, as stipulated in the written instrument. The interpretation of this receipt was for the court. 15 *S. C.*, 302; 24 *Id.*, 497. This receipt contained in itself a contract that could not be varied by parol. *Cummins* v. *Baars* (Minn., 1887), 7 *N. E. Rep.*, 123; 2 *Pars. Cont.*, 555; 1 *Greenl. Evid.*, § 305; 24 *S. C.*, 496; 11 *Rich.*, 137; 10 *S. C.*, 440; 2 *South. Rep.*, 379; 12 *Wall.*, 243; 96 *U. S.*, 431. By the arrangement, the plaintiffs got the advantage of a solvent third party to pay the debt, and of ready money. This was a good consideration. 24 *S. C.*, 497; 11 *Rich.*, 135; 2 *Pars. Cont.*, 619; 127 *Mass.*, 590; 7 *Atl. Rep.*, 365; 70 *Pa. St.*, 315. The Ashley Phosphate Company, a third party, paid this money to settle all disputes and stop litigation. The matter became a contract between a third person and the creditor, and the written declaration is conclusive. 24 *S. C.*, 59.

*Messrs. Trenholm & Rhett,* contra.

March 14, 1888. The opinion of the court was delivered by

MR. JUSTICE McIVER. On May 21, 1886, plaintiffs and defendant entered into a written contract, whereby plaintiffs agreed to sell to defendant about 400 tons of brimstone upon the following terms, to wit, twenty-two 90–100 dollars per ton, defendant giving its note or notes at 90 days for the amount of the purchase money, "accompanied by warehouse receipts for acid phosphates or South Carolina rock, either or both, stored at buyer's works, aggregating in value, at the lowest market price, the amount of said note or notes—said material to be held in trust as collateral

security for the payment of the note or notes given on above contract.    It is understood that in the event of any of said notes being unpaid at maturity, sellers are to have the privilege of demanding the merchandise mentioned in the warehouse receipts, and selling same in the market at the best price obtainable."

On the arrival of the vessel containing the brimstone, in Charleston, plaintiffs tendered the same to defendant, and demanded that defendant should deliver to them its note for the price of the brimstone, together with warehouse receipts for acid phosphate and rock, as specified in the contract.    Defendant not being able to furnish warehouse receipts for the articles specified, to an amount sufficient to cover the purchase money of the brimstone, proposed to supply the deficiency by warehouse receipts for other articles.[1]    This proposition was declined by plaintiffs, who insisted upon the delivery of warehouse receipts for the articles specified in the contract, and these not being furnished, plaintiffs, upon due notice to defendant, sold the brimstone at a loss of five hundred and eighty-seven 70–100 dollars, for which amount this action was brought by the plaintiffs as damages sustained by them by reason of defendant's breach of the contract.

The defence was of a twofold character : 1st. That there was no substantial breach of the contract, inasmuch as defendant, though not offering to give the security specified in the contract, did offer good and sufficient security for the payment of the purchase money of the brimstone.    2nd. That all demands which the plaintiffs may once have had against the defendant have been fully discharged by a receipt given by the plaintiffs to the Ashley Phosphate Company for the sum of $1,530.33, declared in said receipt to be in full of all demands against defendant whatsoever.

The testimony tended to show that prior to the time when the contract for the sale of the brimstone above referred to was made, plaintiffs and defendant had been engaged in business transactions for several years, in which defendant consigned to plaintiffs South Carolina ground phosphate rock, to be sold by them on commission, and purchased from plaintiffs various fertilizer materials,

---

[1] These other articles were, 40 tons acid phosphate, at $400 ; 200 tons of ground and unground phosphate rock, at $1,100 ; and nearly 300 tons kainit, valued at $8 a ton.—REPORTER.

which, as plaintiffs claimed, resulted in a balance due them by the defendant, at the time the contract for the sale of the brimstone was entered into, of nineteen hundred and seventy dollars and seventy-two cents, but which, as defendant claimed, only amounted to fifteen hundred and thirty dollars and thirty-three cents.   After the contract for the sale of the brimstone had been made, and after the brimstone had been resold at defendant's risk, one of the plaintiffs came out to Charleston for the purpose of obtaining a settlement with the defendant.   For that purpose he had an interview with the president of the defendant company, in which he was informed that the assets of the company had been assigned to the Ashley Phosphate Company, with a schedule of defendant's liabilities, which the last named company had assumed to pay, and that if he would go to Dr. Frost, the president of the Ashley Phosphate Company, he would get his money.   He accordingly went to Dr. Frost, who told him that his claim was put down on the schedule furnished him at $1,530.33, and he could only pay that amount.   After some discussion between this plaintiff and Dr. Frost, in which the former claimed the $1,970, and the latter declined to pay more than $1,530, it finally terminated in the plaintiffs receiving the $1,530, and executing a receipt, of which the following is a copy:

"CHARLESTON, S. C., 10–2, 1886.

"Received of Ashley Phosphate Company fifteen hundred and thirty 33–100 dollars, being in full of all demands against the Charleston Phosphate Company whatsoever.

"(Signed)      HELLER, HIRSH & Co."

There was some conflict of testimony as to what passed between the parties in the interviews between the plaintiff and Dr. Frost— the former asserting that the settlement then made was confined entirely to the claim for $1,970, and had no reference to the claim for damages by reason of the breach of the contract for the sale of brimstone, while the latter seemed to have understood that it was a settlement of all claims which plaintiffs had against the defendant company.

The jury found a verdict for the plaintiffs for the amount of their claim for damages by reason of the breach of the contract

for the sale of the brimstone, and the defendant appeals upon the following grounds:

1st. That his honor erred in refusing to charge, as asked by defendant, that the stipulation in the contract, as to the character of the security to be given, was only incidental and collateral to the purpose, which was to amply and fully secure the debt; and that if the jury find from the testimony that the defendant in good faith offered ample and sufficient security, in all respects, to secure the same, and that plaintiffs unreasonably declined it, then that the plaintiffs are not entitled to recover from defendants any damages for the difference between the contract price and the price at which they sold the goods, which damages they would have been fully protected from by accepting the security offered.

2nd. That his honor erred in refusing to charge, as asked by the defendant, that where a party accepts money or other valuable consideration from a third party, and thereupon gives a receipt in full to his debtor, such receipt operates as a payment and extinguishment of the debt, and the person giving such a receipt cannot recover.

3rd. That his honor erred in refusing to charge, as requested by defendant, that if the jury found that the receipt held by the Ashley Phosphate Company was signed by Heller, Hirsh & Company, then the same is binding upon the latter, and that no oral testimony can be received to contradict its terms, and that the jury must find in favor of the defendant.

4th. That his honor erred in charging the jury that no security offered by the defendant, even if double in value that required by the agreement, would suffice, but that the plaintiffs had the right to proceed and sell the brimstone under the contract, and hold defendants liable for the damages caused by the difference between the contract price and the price of sale; whereas his honor should have charged that if the defendant offered security amply sufficient to secure the payment of their notes, and to protect plaintiffs from any damage, then that plaintiffs were authorized to rescind the contract and keep the brimstone, but could not hold the defendant liable for any damage caused by the sale of same.

5th. That his honor erred in charging the jury that a receipt could always be explained by parol testimony; whereas he should

have charged that a receipt *inter partes* only can be so explained; but that where a receipt is given to a third person for a consideration, it stands on the same footing as any other contract, and its terms cannot be varied or contradicted.

It seems to us that these grounds of appeal raise, substantially, but two questions : 1st. Whether the failure of the defendant to give the security specifically provided for in the written contract was such a breach of the contract as would authorize the plaintiffs to sell the brimstone and recover the difference between the contract price and the price obtained at such resale, in view of the fact that defendant had offered other securities sufficient to secure the payment of the contract price. 2nd. As to the effect of the receipt, and whether it could be explained by parol testimony.

As to the first question, in view of the indisputable proposition, that a court has no power to *make* contracts, but is confined to the construction and enforcement of them, after they are made by the parties themselves, we do not see how there can be but one answer. Here the parties have made their contract in writing, and have carefully specified therein its several terms, amongst which is the particular kind of security to be given, and we do not see by what authority we can dispense with a compliance with that provision of the contract, any more than we could with any other of the provisions—as to price, time of payment, or anything else. The parties not only had a right to enter into this contract, or not, as they might see fit, but they had an equal right to prescribe all of the terms of the contract, and as one of those terms they have prescribed—*not* that good and sufficient security shall be given, as might and probably would have been the provision if the particular kind of security had been deemed immaterial— but they have distinctly and specifically prescribed what should be the security, and this is just as much a part of the contract as any other of its provisions.

It is argued, however, that the main purpose of the contract was to secure payment of the purchase money of the brimstone, and that the provision as to security was merely ancillary to that purpose, and hence, if such security was offered as would secure the main purpose, there was no substantial breach of the contract, and, therefore, the plaintiffs could not recover. A sufficient an-

swer to this would be, that we find no testimony in the "Case" as to what was the main purpose of the contract, and in the absence of such testimony, the Circuit Judge could not properly have charged as requested, for that would have been assuming a fact of which there was no evidence. But we are not disposed to rest our conclusion upon this; for even assuming that it was competent for the judge to determine, from the terms of the contract, what was its main purpose and what was merely ancillary to such purpose, we see nothing in those terms which would warrant the conclusion that the particular kind of security to be given was an immaterial matter. On the contrary, we can very well conceive a case in which the security specified would form an essential part of the contract.

For example, if a person engaged in commercial business, where promptness and punctuality are oftentimes of the last importance, should enter into a contract for the sale of a certain article on time, the purchase money to be secured by a deposit of United States bonds or other like securities, which are always readily convertible into cash, it would scarcely be contended that an offer of a mortgage of real estate of five times the value of the purchase money should be regarded as a substantial compliance with the terms of the contract. So that it will not do to lay down as a rule, that where specific security is stipulated for, such a stipulation is merely ancillary to the main purpose of the contract, and, therefore, the offer of other security of equal, or even greater, value is a substantial compliance with the terms of the contract. For all that appears in this case, the particular security stipulated for might have been one of the essential inducements for the plaintiffs to enter into this contract; and when it is remembered that the securities specified were the warehouse receipts for just such articles as the plaintiffs were dealing in, it is not improbable that they regarded the kind of security as an essential matter. At all events, such was the contract of the parties, and we see no authority by which we can alter it.

Indeed, the defendant's fourth ground of appeal seems to concede that the failure of the defendant to give the security stipulated for would have authorized the plaintiffs to rescind the contract, though if in lieu thereof he had offered good and sufficient

security, the plaintiffs could not hold the defendants liable for any damages resulting from a resale of the brimstone. This necessarily implies that the failure to give the security specified in the contract was a breach of the same, and, as we understand it, in such cases the vendor has a choice of one of three remedies: 1st. He may store or retain the property for the vendee, and sue him for the entire price. 2nd. He may sell the property and recover the difference between the contract price and the price obtained at the resale. 3rd. He may keep the property as his own, and recover the difference between the market price at the time and place of delivery and the contract price. *Benj. Sales,* § 788. It seems to us, therefore, that, in any view of the case, the first question must be answered adversely to the appellant.

The next inquiry is as to the effect of the receipt. The general rule—that a receipt is always susceptible of explanation—is not controverted by the counsel for appellant, but he contends that where a paper, though in the form of a receipt, expresses an understanding with a third party for a consideration, then it stands upon the same footing as a written contract, and its terms cannot be varied or explained by parol evidence. Without undertaking to question this general proposition, or to inquire into its limitations, it will be necessary to consider first whether the receipt in this case is of that character. In form it is an ordinary receipt, acknowledging the payment of a specified sum of money, in full of all demands to date; and if that was all, there could be no doubt that it was competent for the plaintiffs to show, by parol testimony, that though expressed to be in full of all demands whatsoever, it did not include the claim upon which the present action is founded, but was intended to be confined to a settlement of the claim for $1,970, growing out of the previous transactions between the plaintiffs and defendant.

The contention, however, is that it is not an ordinary receipt, given by the creditor to his debtor, but that it was given to a third party—the Ashley Phosphate Company—and that it amounts to a written contract between the plaintiffs and such third party for a discharge of the defendant from all liabilities whatsoever, and, therefore, its terms cannot be varied by any parol testimony. We cannot so regard it. There is nothing in the terms of the

paper indicating any such contract, and there is not the slightest evidence of any consideration for such a contract. It is a bare, naked admission by the plaintiffs of the receipt from the Ashley Phosphate Company of the amount admitted to be due by defendant on the antecedent transactions between the plaintiffs and the defendant, which the Ashley Phosphate Company had assumed to pay for the defendant. It may be that where a creditor, failing to obtain payment from his debtor, enters into an agreement with a third party, that, if he will pay him a certain portion of his debt, he will discharge the debtor from all further claims, and the money is paid, in pursuance of such agreement, and a receipt given accordingly, that such receipt would amount to a contract which could not be varied by parol testimony. But that is not the present case. Here the assets of the defendant company had been assigned to the Ashley Phosphate Company, who was furnished with a schedule of defendant's debts, which the Ashley Phosphate Company assumed to pay, amongst which was the debt to the plaintiffs amounting to the precise sum mentioned in the receipt; and when that sum was paid by the Ashley Phosphate Company to the plaintiffs, it was, in fact, paid with the funds of the defendant, the proceeds in part of its assets, and was not paid out of the funds of the Ashley Phosphate Company. The latter company, in the transaction, was really acting as the agent or trustee of the defendant company.

We are unable to discover anything in the transaction which would impart to it the character of a contract between the plaintiffs and the Ashley Phosphate Company, and even if there was, there certainly is not the slightest evidence of any consideration to support such a contract. It does not even appear that the Ashley Phosphate Company was a creditor of the defendant company, and, as such, having an interest to procure the discharge of the defendant from its liabilities. On the contrary, its only connection with the matter, so far as the testimony discloses, is, that it was the purchaser or assignee of the assets of the defendant, bound to pay certain debts specified on a schedule furnished, one of which was the debt paid to plaintiffs. Dr. Frost, the president of the Ashley Phosphate Company, declined to pay, and did not pay, one cent more than the amount his company, by the

terms of the purchase from the defendant company, had assumed to pay, and we are unable to discover any evidence of any consideration for any contract between the plaintiffs and the Ashley Phosphate Company.

So that, even if it be conceded that the proposition of law as contended for by appellant is correct, the Circuit Judge committed no error in declining to charge as requested, or in omitting to charge "that where a receipt is given to a third person for a consideration, it stands on the same footing as any other contract, and its terms cannot be varied or contradicted." For it is well settled that there is no error in declining to charge propositions of law for which there is no foundation in the testimony. *Fell* v. *Dial,* 14 *S. C.,* 247.

The judgment of this court is, that the judgment of the Circuit Court be affimed.