13487

WACCAMAW GROCERY CO. v. DAWSEY

(165 S. E., 781)

*Messrs. G. L. Ford* and *E. S. C. Baker,* for appellant,

*Messrs. T. B. Lewis, E. J. Sherwood* and *C. B. Thomas,* for respondent,

October 10, 1932.

The opinion of the Court was delivered by Mr. Justice Carter.

This case, which was commenced in the Court of Common Pleas for Horry County, November 13, 1926, is an action on the part of the plaintiff, Waccamaw Grocery Company, for recovery of judgment against the defendant, J. E. Dawsey, in the sum of $15,000.00, based on the alleged unlawful seizure and conversion by the defendant of certain stock of goods, wares, merchandise, and money, alleged to have been owned by the plaintiff. Under the allegations set up in the plaintiff's complaint, the plaintiff asks not only for actual damages but for punitive damages also. By way of answer the defendant denied the material allegations set up in plaintiff's complaint, and alleged that he got possession of the said property in a peaceable and lawful way, and, further, that he was entitled to the same. Mr. Scarborough, defendant's counsel, who filed the answer for the defendant, died in November, 1927, and for this reason, it appears, the trial of the case was delayed. Later the case was tried at the spring, 1928, term of said Court, the defendant appearing in person and without counsel. The trial resulted in a verdict for the plaintiff in the sum of $243.00. On motion of plaintiff, the defendant consenting in person, a new trial of the case was ordered. It appears, further, that the case was again tried at the October, 1928, term of said Court, before Hon. T. S. Sease, Circuit Judge, and a jury, the defendant again appearing in person and without counsel, which trial resulted in a verdict for the plaintiff in the sum of $2,000.00. Following the return of said verdict for the plaintiff, the defendant in person made a motion for a new trial. Thereafter, he employed counsel and the motion

for a new trial was heard before his Honor, Judge Sease, who issued an order, dated October 19, 1929, refusing the motion. From the said order refusing the motion for a new trial and from judgment entered on the verdict, the defendant has appealed to this Court, and the case was heard in this Court in May, 1932.

It is the contention of counsel for appellant that the exceptions raise eight issues, and we shall consider the same in the order presented.

The first question, stated by counsel, reads as follows: "Was it error to refuse appellant's motion for a new trial?"

One of the grounds upon which the motion for a new trial was based was that, on account of defendant having no counsel to represent him at the trial, and he being unlearned in the law and the procedure in the trial of cases, incompetent and prejudicial testimony was presented to the jury. We are unable to agree with this position. In the first place the appellant had ample time to procure counsel, and, so far as the record discloses, no motion for a continuance was made upon that ground. Furthermore, an examination of the entire record convinces us that there is no merit in this contention, for we find no instance during the entire trial of the case in which the advantage was taken of appellant by reason of his not having any counsel.

Another ground upon which the motion for a new trial was based was that the Court permitted to be introduced in evidence certain papers and notes. In our opinion, these exhibits had a bearing on the issues involved, and for that reason the trial Judge committed no error in allowing them to be introduced in evidence. Furthermore, the defendant during his cross-examination of Mr. Jenerette, a representative of the plaintiff, went into matters covering the entire business transaction of the parties, and we are satisfied that the defendant was not prejudiced by the introduction of the papers complained of.

Another ground upon which the motion for a new trial was based was that the trial Judge erred in asking the defendant questions while the defendant was testifying during the trial of the case. The testimony in the case was very confusing and evidently difficult for the members of the jury to understand. In our opinion, in asking the questions, the trial Judge was endeavoring to get the facts in the case and what his Honor did tended to assist the defendant. We see no ground for complaint in this respect.

Still another ground upon which the motion for a new trial was based was that the trial Judge asked the counsel for the plaintiff, in the presence of the jury, to state the plaintiff's position in the case. Clearly in doing this the trial Judge had in mind getting the issues straightened out so that in his charge he could make the issues clear to the jury. There was nothing to have prevented the defendant from stating his position if he had so desired. The defendant was certainly in no way prejudiced by the action of the trial Judge.

In the defendant's motion for a new trial, he also complained that the trial Judge committed error in his charge to the jury. It would serve no useful purpose to discuss herein the Judge's charge, and we deem it sufficient to state that, after a most careful consideration of his Honor's charge, we fail to see wherein the defendant was in any way prejudiced by any instruction that his Honor gave the jury or any statement made by his Honor. Further, it is our opinion that his Honor gave the jury sufficient instruction as to their duty on every issue to enable them to render a correct verdict, and that the defendant was not prejudiced by his Honor having not given additional instruction as to any issue. As to the question of punitive damage, there was ample evidence to go to the jury on that issue.

The second, third, fourth, and fifth issues raised by the exceptions, as stated by appellant's counsel, read as follows:

"2. Was irrelevant and improper testimony allowed to be introduced?

"3. Did the Court abuse its discretion by interrupting and examining appellant as witness on the stand and thereby prejudice the case against him?

"4. Was it error to allow respondent's counsel to state his position in open Court in the presence of the jury?

"5. Did the Court err in charging the jury and in failing to charge the whole law applicable to the case?"

These questions are disposed of by what we have said herein in our consideration of the motion for a new trial.

Under the sixth issue, as stated by counsel, errors are imputed to the trial Judge as follows:

"6. Errors relating to the verdict as follows:

"(a) Did the Court err in directing and allowing the finding of a general verdict, both actual and punitive damages having been prayed for?

"(b) Did the Court err in failing and refusing to direct a verdict for appellant as to punitive damages?

"(c) Did the Court err in allowing the sum of Two Thousand ($2,000.00) Dollars actual damages, as excessive and unwarranted by the testimony?"

As to the question of punitive damages, as stated above, there was ample evidence to go to the jury on that issue, and it was not incumbent upon the trial Judge to instruct the jury to separate actual from punitive damages. Furthermore, we cannot say that the verdict was excessive. The defendant, to say the least, acted very unwisely, and his conduct was certainly not commendable. He had no right, under the law, to take forcible possession of the property in question, but should have applied to the Court for that purpose, if he thought he was entitled to the same.

The seventh question raised by appellant's exceptions reads as follows: "7. Did the Court abuse its discretion in the matter of rushing the jury in its deliberations and cautioning it in relation thereto?"

A close reading of the entire record fails to reveal to us that the Court did anything to rush the jury in reaching a verdict in this case. At one time, when the jury was brought out before him for instruction, his Honor stated to the jury, in effect, that, while the Court was waiting on them, for them not to hurry, but to take whatever time was necessary in deciding this case.

The following is the eighth issue presented by the appellant: "8. Did the Court err in excluding from the jury's consideration as an offset any indebtedness owed by respondent to appellant?"

According to our view of the case, the appellant has no ground to complain in this respect. It does not appear that any evidence was excluded regarding the claims of the defendant, and, furthermore, the pleadings could not be said to contemplate the proof of such alleged claim. We may state, further, that the defendant was given wide range in testifying to matters concerning the entire transaction, and it was only in a very few instances that any objection was interposed.

After a careful consideration of the entire record in the case, it is our opinion that the defendant had a fair trial, and the exceptions will have to, therefore, be overruled.

It is the judgment of this Court that the judgment of the Circuit Court be, and the same is hereby, affirmed.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Bonham and Mr. Acting Associate Justice W. C. Cothran concur.

Mr. Justice Bonham: I concur in the main opinion in this case prepared by Mr. Justice Carter. It occurs to me, however, that an issue made by certain exceptions and the argument of counsel for appellant may well be more especially noticed.

The appellant contends that, inasmuch as the presiding Judge charged the jury that plaintiff, Waccamaw Grocery Company, was a corporation, and the evidence showed that

N. P. Jenerette was trading and doing business under the name and style of Waccamaw Grocery Company, it was error so to charge.

By Exception 6 the Court, it is alleged as error, charged the jury that it was necessary for the defendant—appellant here—to have an absolute ownership of the property in order to have the right to take it, without liability, and thereby excluded the question of joint ownership, the question of both parties being officers of the corporation, and excluded the further question of defendant's right of possession by reason of the lien he held thereon.

Counsel for appellant argue that there was no legal transfer of the capital stock of the corporation held by him; that he had an equitable right to repossess himself of the assets of the corporation by reason of the fact that, as the majority stockholder, he had the right to the possession, and that he had that right by reason of a lien thereon. He argues that, inasmuch as the Court charged on the question of the corporate capacity of the company, he should have charged further upon the questions above stated, especially as defendant, a layman unversed in the law, was without counsel in the trial of the case.

Presumably, the first allegation of error set out above, which is stated in Exception 11, is predicated upon the theory that the charter of the corporation had been forfeited when Jenerette bought the stock of Dawsey and became the sole stockholder of the corporation. And, presumably, this position is based upon the ground that Section 7726 of the Civil Code of 1932 requires that, in order to obtain a charter of a business corporation, there shall be two or more corporators, and, since only one is now in the corporation, the charter has been forfeited.

Section 7732, Civil Code (1932), provides that: "No irregularity in complying with the provisions of Sections 7726 to 7730, inclusive, and Sections 7732 to 7756, inclusive, shall be held to vitiate the incorporation until a direct

proceeding to set aside and annul the charter be instituted by the proper authorities of the State; and all acts done and contracts entered into shall have the same force and effect as if no irregularity had existed."

And this provision relates to operations of the corporation subsequent to, as well as those precedent to, the granting of the charter of incorporation.

The only provision in the Civil Code for the *ipso facto* forfeiture of a charter is for the failure to pay taxes. See Section 7704, Code 1932. There is ample provision for the forfeiture of a charter and dissolution of the corporation by proper legal process, upon good cause.

"The necessity of judicial proceedings to effect a dissolution in law depends usually upon construction of particular statutes, the rule being that unless there are some statutory provisions clearly requiring it, the breach of a condition subsequent does not operate as an *ipso facto* dissolution, but simply affords ground upon which the State may maintain judicial proceedings therefor; and that the corporation continues to exist, even after initial steps taken to forfeit its charter, or proceedings recommended for its dissolution, until the sovereignty which created it shall, by proper proceedings in a proper Court procure a final adjudication of forfeiture and dissolution." 14 A. C. J., § 3683.

All charters granted under the provisions of our statutes governing this class of charters are perpetual, unless limited by the terms of the petition. Section 7743, Civil Code (1932).

"The original charter duly certified is the highest evidence of the incorporation." *Sumter Tobacco Warehouse Co. v. Phœnix Assur. Co.,* 76 S. C., 76, 56 S. E., 654, 656, 10 L. R. A. (N. S.), 736, 121 Am. St. Rep., 941, 11 Ann. Cas., 780.

In the present case the original charter was put in evidence. There is an utter absence of proof that it has been amended or the corporation dissolved.

The Court committed no error when it charged that Waccamaw Grocery Company, the plaintiff named in the complaint, was the plaintiff in the action.

The second alleged error set out hereinabove, and embodied in the sixth exception, likewise relates to the charge that plaintiff is the corporation; that defendant must have absolute ownership to justify his taking possession of the assets, the alleged errors being that this charge excluded the question of joint ownership by plaintiff and defendant, and the question of both of them being officers of the corporation, and the question of defendant's right of possession by reason of the lien which he held on the physical assets of the company.

The argument in support of these contentions proceeds upon the hypothesis that there was no legal transfer of the defendant's capital stock to plaintiff; hence defendant had an equitable ownership of it which entitled him to take possession of the assets of the company; that, as the majority stockholder, he had the right to direct and control and possess the assets of the corporation; that, by the terms of the sale of the capital stock of defendant to plaintiff, defendant had a lien on the physical stock of goods and the consequent right to seize them.

Section 7746, Civil Code (1932), provides that: "No transfers of stock shall be valid *except as between the parties thereto* until the same shall have been regularly entered upon the books of the corporation."

It is a necessary deduction from the italicized words in the above quotation that any valid transfer of corporate stock, if made upon a good consideration, is valid as between the parties. In this case defendant admits that he sold his capital stock in the plaintiff corporation to N. P. Jenerette for a stated sum, that he accepted a note in payment thereof in which the purchaser, Jenerette, pledged his interest in the corporation as collateral security for the debt, and authorized Dawsey, if the debt is not paid

at maturity, to sell the security in payment. He admits that he received several payments on this note, he admits that it was not due when he broke and entered the storeroom occupied by plaintiff and possessed himself of the physical assets of the corporation, which he proceeded to dispose of.

In these circumstances Dawsey had no right to take possession of the assets of the company *vi et armis*.

If plaintiff was dissipating the assets, defendant had ample protection by proper legal proceedings. His action in taking possession of the assets in the manner pursued by him was high-handed to a degree. There was no error as alleged.

I concur in the conclusion of the main opinion that the judgment of the lower Court be affirmed.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.