15474

CLINKSCALES v. NORTH CAROLINA MUTUAL LIFE INSURANCE CO.

(23 S. E. (2d), 1)

*Messrs. Watkins & Prince,* of Anderson, Counsel for Appellant,

*Mr. Leon W. Harris,* of Anderson, Counsel for Respondent,

Counsel for Appellant,

November 30, 1942.

CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE, delivered the opinion of the Court.

This action to recover damages for the alleged fraudulent cancellation of a health, accident and death benefit insurance policy issued to the plaintiff by the defendant was tried before Hon. E. C. Dennis, presiding Judge, and a jury, at the March, 1942, term of the Court of Common Pleas for Anderson County, and resulted in a verdict in favor of the plaintiff for $1,500.00. Defendant's motions for a directed verdict and for a new trial were timely made but were refused, and the case comes to this Court upon the defendant's appeal from the judgment entered on the verdict.

There are two general exceptions, one to the refusal of the motion for a directed verdict and the other to the refusal of the motion for a new trial; and there are five specifications relating to the second general exception, but counsel for appellant did not argue two of these specifications.

While the evidence is in sharp conflict on the material issues we think it is clear that these issues were properly submitted to the jury. Indeed, defendant's exception to the refusal of the motion to direct a verdict is based solely on the recitals in two written instruments signed by the plaintiff, to which reference will hereinafter be made.

The policy of insurance in question was issued by the defendant company to the plaintiff on April 13, 1936, and provides among other things for disability benefits on ac-

count of illness and for the payment to the beneficiary in the event of death of a small sum. The premium was 25 cents per week payable weekly.

It appears from the testimony of the plaintiff that during the years 1939 and 1940 her health failed and that she was ill at certain times for which sick claims were filed, but that some of these claims were not paid and others were paid only in part. And she further testifies that during the fall of the year 1940, the agent of the defendant company, whose uniform custom had been to call at her home for the weekly premiums, ceased to do so, although he was seen in that community about his usual business of collecting premiums; and the plaintiff says that on three or four occasions she sent these premiums to the agent and that on each occasion he refused to accept them, stating that he would call to see her. It appears, however, that he did not actually call until much later, but that on November 16, 1940, he did accept payment of $1.50 which admittedly was sufficient to pay all weekly premiums then in arrears; yet according to the plaintiff's testimony the agent came back in about a week and offered to return the $1.50 previously paid, which she then refused to accept, and that the next week another agent brought the money back stating that he was sorry the company had refused to take it, but that the plaintiff could get another policy. At that time the plaintiff was sick in bed and she admits taking the $1.50 and signing a paper, at the request of the agent, which she did not read.

Quoting from her testimony: "I told Washington about them paying me part of the benefit and about cheating me out of two weeks benefit already, and he said, 'well, it's just the company just refused to take the dollar and a half, and I'm sorry, but you can get another policy and you just sign this.' I signed the paper and he gave me the dollar and a half back." Washington, the agent referred to, died prior to the time of the trial. The paper just mentioned which the plaintiff signed was a receipt which will hereinafter be set

out in full. The plaintiff admitted signing the paper but said she did not read it. The evidence shows that she is able to read and write, but the record does not show the extent of her education.

It appears that at the time the $1.50 was given by the plaintiff to the defendant, to wit, on November 16, 1940, the plaintiff signed an application for a revival of the policy, this application being taken by B. F. Doyle, one of the agents of the company who had formerly collected the weekly premiums. It would seem from the plaintiff's testimony that she was not aware of having signed this application, but she admits her signature thereto, and the contention of the defendant that a verdict should have been directed in its favor is based in part on certain recitals contained in this application, to wit, especially the following which is found in the printed part of the form used: "The above described policy having lapsed and the Insured having forfeited all claims thereunder, application is hereby made for its revival." It is also recited that $1.50 had been deposited, the same representing arrears of premiums, as required by the policy. It is quite true as a general proposition that responsibility for statements contained in a writing duly signed cannot be avoided or evaded by failure of the signer to read the same; and this rule is applicable to written contracts including insurance policies.

A recent and interesting case on this subject is that of *Barnes v. Industrial Life & Health Ins. Co. of Atlanta*, 201 S. C., 188, 22 S. E. (2d), 1, but that case related to a term of the contract of insurance itself. Obviously the recitals in an application for reinstatement of an insurance policy where the application is rejected, as was done in this case, cannot be considered contractual in their nature, and if effective at all must be so only on the principles of waiver or estoppel. And if the plaintiff's testimony is to be believed, and evidently it was accepted by the jury, it is clear that her policy was not subject to cancellation at the

time the application for reinstatement was signed, in view of the repeated tender of premiums within the grace period of four weeks, aside from the failure of the agent to call as was his custom. Besides, the claims for sick benefits which the plaintiff testified she had filed, and which had not been paid, were far more than sufficient to pay the amount of the weekly premiums which the defendant company contended was due. If therefore the company had in hand funds belonging to the plaintiff more than enough to pay the premiums alleged to be in arrears, obviously a forfeiture could not be declared. *Cole v. Jefferson Standard Life Ins. Co.,* 113 S. C., 22, 100 S. E., 893. In fact, the policy itself stipulates that upon the payment of any claim thereunder any premium then due and unpaid may be deducted therefrom.

Since then there was ample evidence to support the conclusion that the policy had been wrongfully and fraudulently cancelled by the defendant company (and the jury manifestly so found) it is in no position to claim the benefit of the doctrines of waiver and estoppel, or either of them, especially in view of the fact that the application shows on its face that the agent who took it signed on the very same day a certificate thereon stating that he considered the applicant to be in poor health and recommended "that application be rejected." In other words, it appears that the application was in reality rejected at the same time it was taken, which tends to show that the company was fully aware of plaintiff's impairment of health when the agent ceased to make his weekly calls for the premium payments.

The receipt which was signed at the time the agent Washington returned the sum of $1.50 to the plaintiff is as follows:

"I, Florence Clinkscale, acknowledge receipt of $1.50 deposit made by me on application for insurance which the

company rejected. This acknowledgment relieves the company of further responsibility.

Florence Clinkscale.

Signature of Applicant.

Date 12-12, 1940."

Of course the statement relied on by the appellant is the acknowledgment purporting to relieve the company of further responsibility, but we are unable to accept the view that it should be held as a matter of law to have this effect. Aside from the testimony that the agent misrepresented to the plaintiff that she could get another policy, it is clear that the receipt cannot be regarded as a release, and this may be the reason the same was not pleaded as such in the answer. It is not under seal and there is obviously no consideration therefor. If as plaintiff contended the defendant company had unlawfully cancelled the policy she was entitled to receive on account of premiums paid much more than the sum of $1.50, as well as certain other amounts.

In the case of *Sutton v. Continental Casualty Co.*, 168 S. C., 372, 167 S. E., 647, a check was delivered to the insured for a certain amount in payment of a sick benefit claim, and on the back of the check just above the place for the insured's endorsement was a receipt for the amount of the check including a recital in the nature of a release of any and all claims under the policy. This endorsement was signed by the insured but the court held that the release was without consideration and ineffectual as to any other claims under the policy.

Indeed, under well-established principles of law the instrument in question is actually nothing more than an ordinary receipt, and "a receipt is always susceptible of explanation." A typical case on this proposition is that of *Heller v. Phosphate Co.*, 28 S. C., 224, 5 S. E., 611 614, opinion by Mr. Justice McIver, where the Court says: "In form it is an ordinary receipt, acknowledging the payment of a specified sum of money in full of all

demands to date; and, if that was all, there could be no doubt that it was competent for the plaintiffs to show by parol testimony that, though expressed to be in full of all demands whatsoever, it did not include the claim upon which the present action is founded, but was intended to be confined to a settlement of the claim for $1,970, growing out of the previous transactions between the plaintiffs and defendant."

And the Court goes on to say that the contention that it was not an ordinary receipt but a written contract was untenable, and moreover, that there was no evidence of any consideration to support such a contract.

Our conclusion is that the Court properly refused to grant defendant's motion for a directed verdict.

The complaint plainly alleged the filing of claims for the payment of sick benefits which the defendant refused to pay, and such refusal was also stated in the complaint as an element of damages. Hence it seems clear that the trial Judge committed no error in allowing testimony in regard to the claims or in overruling the motion for a new trial on this ground. See *Thomas v. American Workmen,* 197 S. C., 178, 14 S. E., (2d), 886, 136 A. L. R., 1, where it was expressly held that unpaid sick benefits were properly allowed as actual damages in a somewhat analogous suit on an insurance policy.

The other exceptions or specifications which were argued by counsel for the appellant refer solely to the charge, and the first one for consideration is that the presiding Judge erred in not charging the provisions of Paragraph 3 of the policy which relate to the conditions upon which the policy may be revived or reinstated should it "become lapsed." After the completion of the charge the trial Judge asked counsel if there was anything further, and each of them made certain oral requests, some of which were charged by the Court, but he does not appear to have charged these particular policy provisions. We do not think, however,

that any error was committed in this respect, for the reason that there was not the slightest contention in regard to these provisions of the policy, the basic issue in the case being the contention of the plaintiff that the defendant company had wrongfully and fraudulently caused the policy to lapse. No question whatever was made about the availability or validity of the method provided in the policy for its revival if lawfully lapsed.

It is also alleged that the Court erred in not charging the measure of actual and punitive damages and that hence there was no limitation as to what the jury might take into consideration in assessing either actual or punitive damages. The following excerpts contain all, or substantially all, that was said by the presiding Judge on this subject:

"Now then, this plaintiff asks you for a verdict for her actual damages, which she sets forth is the amount of these sick benefits and things of that kind that they didn't pay, and she asks you for punitive damages also.

"Actual damage is compensation for loss or injury. A person destroys some of your property and undertakes to compensate you. That means to pay you actual damage for the destruction. Or if he injures it and it's injured just through mere negligence and he pays you for it, that is not punitive dameges at all, that's your actual damage.

"Now in actions on contract, the only basis for punitive damage is where there has been a fraudulent breach of the contract, a fraudulent act. If the evidence in this case establishes such a breach of contract, that would be the basis then for punitive damages."

After the jury had retired for consideration of the case counsel for the defendant called the attention of the Court to his contention that any payments which might be due on the benefit claims submitted prior to the alleged breach of the contract would not constitute an element of actual damages, because the policy was in force at that time, but the presiding Judge did not agree with this

view, and we think he was correct, for reasons already indicated. This was the only request or suggestion made in this connection by counsel for defendant, but in the course of the colloquy on the subject the trial Judge asked counsel for defendant for his opinion as to the measure of actual damages, and he frankly replied in substance that he thought it would be the difference in any cost of insurance the plaintiff might be able to get, with a return of the premiums.

We quite agree that a more complete statement of the measure of actual damages is to be found by reference to the opinion delivered by Mr. Justice Bonham in the case of *Pack v. Metropolitan Life Ins. Co.,* 178 S. C., 272, 182 S. E., 747, 749, where it is said that the measure of damages is the sum of the premiums which had been paid by the insured and the loss by reason of the lapse of the policy, such loss to be ascertained "as for example, by ascertaining her life expectancy and the amount she would be required to pay for insurance of like character during such period, but such sum cannot equal the amount of the lapsed policy; and, of course, any special damages which plaintiff has suffered." And it is unnecessary to determine whether or not the return of the premiums would be limited to the percentage thereof provided by the policy for insurance against death.

However, the charge made by Judge Dennis was not incorrect, but on the contrary properly states the general principles, and as already mentioned there was no request on this point made by counsel for the defendant, and perhaps there was no such request because a further elaboration might more appropriately have been asked in behalf of the plaintiff. In other words, the failure to make a more comprehensive charge on the subject was evidently not prejudicial to the defendant.

So far as punitive damages are concerned, there was not only no request to charge, but in the discussion between the Court and counsel no reference what-

ever was made to this kind of damages. The charge indeed contains nothing more than the "bare bones" of the law relating to punitive damages, but the trial Court is not required to do anything more than to state the general principles applicable unless request for elaboration is made. See *Coleman v. Lurey,* 199 S. C., 442, 20 S. E. (2d), 65.

It is perhaps unfortunate that the verdict rendered in this case did not state separately the amounts of actual and punitive damages awarded. Such information would have been quite valuable to the trial Judge in passing on the motion for a new trial, but there was no request that the jury be charged as to such separation, and no objection whatever raised as to the form of the verdict. In the case of *Waccamaw Grocery Co. v. Dawsey,* 167 S. C., 74, 165 S. E., 781, 783, it was specifically held that "it was not incumbent upon the trial judge to instruct the jury to separate actual from punitive damages"; and in the case of *Hollis v. Armour & Co.,* 190 S. C., 170, 2 S. E. (2d), 681, 685, the Court held that although the trial Judge had instructed the jury that the verdict should specify whether the amount awarded was for actual or punitive damages or for both, and yet a general verdict was returned, no objection by the defendant to the form thereof could later be considered where counsel "sat silently by and permitted the jury to disperse without raising any question thereabout." We may say, however, that while the authority of these cases is not to be impugned, we strongly approve the practice, which we believe is generally followed, of instructing the jury to let the verdict show the character of damages awarded, and if for both actual and punitive damages, the amount of each; and if a general verdict is nevertheless returned a correction thereof is immediately required.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES, concur.