17322

HENRY B. WINCHESTER, Respondent, v. UNITED INSURANCE
COMPANY
(99 S. E. (2d) 28)

*Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, *for Appellant,*

464

*Messrs. Mike S. Jolly, David N. Wilburn, Jr.* and *Long & Long,* of Union, *for Respondent,*

*Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, *for Appellant,*

July 8, 1957.

OXNER, Justice.

This action was brought to recover damages for the alleged wrongful cancellation of an insurance policy issued to respondent, Henry B. Winchester, by Capital Life Insurance Company on March 1, 1954. He was then 31 years of age. This policy provided for surgical benefits according to a schedule set forth therein and also for an accidental death benefit. The premium was payable weekly. The Capital Life Insurance Company was subsequently acquired and its liabilities assumed by United Insurance Company, against whom this action was brought. The Company denied that it wrongfully cancelled the policy and alleged that it lapsed for non-payment of premiums. The trial resulted in a verdict in favor of the insured for $1,500.00. From the judgment entered on said verdict, the Insurance Company has appealed.

This case was recently before us on the question of whether the Court below erred in refusing to consolidate it with another action for fraudulent breach of a policy issued by the

Capital Life Insurance Company to respondent on March 1, 1954, which provided for certain hospital benefits and also a death benefit. 99 S. E. (2d) 34. We held that there was no error in refusing the motion to consolidate. *Winchester v. United Insurance Co.*, S. C., 98 S. E. (2d) 530.

There are numerous questions raised by the exceptions but we need only consider (1) whether the Court erred in refusing appellant's motion for a directed verdict upon the ground that the policy lapsed for non-payment of the premium, and (2) whether the verdict is excessive. These will be considered in the order stated.

In March, 1956, or about two years after the policy was issued, an injured or diseased foot and leg disabled respondent from working for a period of about ten weeks. During the first ten days he was in the hospital, where an operation was performed. About April 1st he filed a claim on the policy. After inquiring at appellant's office at Union several times as to the payment of his claim, respondent was told to go to the home office in Columbia. He says that he went to Columbia on June 4th or 5th and was informed by the official handling the matter that "he was writing up the claim and that he was cancelling out my insurance." Respondent replied that the policy was non-cancellable. This official then stated, according to respondent, that he was going to put a rider on the policy excluding "anything pertaining to my right foot or my right side." He was further told that the check for the payment of his claim would be forwarded to the district office in Spartanburg. Respondent went to Spartanburg and received the check on June 8th.

It seems to be undisputed that the last premium paid by respondent was on April 28, 1956, which covered the week ending May 6th. The policy provided for a grace period of four weeks. Appellant contends that this period expired and the policy lapsed on June 3, 1956. Respondent contends that the policy did not lapse until July 16th and that when his claim was paid on June 8th he offered to pay all past due premiums. He says that his failure to pay the premiums on

time was due to the fact that the Company failed to promptly pay his claim and that being out of work, he had no other funds with which to make payment. He further contends that the local agent advanced several premiums for him. The local agent, a witness for appellant, testified that it was the policy of the company not to cancel the insurance of a policy holder while a claim was pending; that on numerous occasions he had advanced premiums for respondent; that he was told by the district superintendent on June 25th to cancel respondent's policy as of July 16th; that "it was officially lapsed on the 16th of July"; and that it remained in force until that date.

Although the Company contends that the policy lapsed on June 3rd, no explanation is given why it was not lapsed on its records until July 16th. We think the jury could have reasonably inferred either that the local agent had advanced several premiums or that the Company waived payment during the pendency of the claim. It is undisputed that appellant offered to pay all past due premiums when his claim was paid on June 8th.

There is another reason why the Company could not have invoked a forfeiture on June 3rd. The general rule is that an insurer is not justified in declaring a forfeiture of an insurance policy for the non-payment of premium when, at the time such premium accrues, the insurer is in any way indebted to the insured in an amount equal to or greater than the amount of the premium due. 29 Am. Jur., Insurance, Section 415. "This rule is based on the principle that it would be inequitable for an insurance company to forfeit a policy when it holds funds belonging to the assured which are presently payable." *American National Insurance Co. v. Yee Lim Shee,* 9 Cir., 104 F. (2d) 688, 694. This rule has been applied to prevent policy forfeiture where sick, disability or other benefits were due and payable to the insured. *Clinkscales v. North Carolina Mutual Life Insurance Co.,* 201 S. C. 375, 23 S. E. (2d) 1; *Olezene v. Eagle Life Insurance Co., Inc.,* 11 La. App. 153, 121 So. 881; *Washing-*

*ton National Insurance Co. v. Dukes,* 53 Ga. App. 293, 185 S. E. 599; *National Life & Accident Insurance Co. v. Gross,* 195 Ark. 828, 114 S. W. (2d) 466. No explanation is found in the record for the delay in acting on respondent's claim. The jury could reasonably infer that this claim should have been paid prior to June 3rd and on that date there was due and owing to the insured an amount in excess of the premiums in arrears.

Having concluded that the motion for a directed verdict was properly refused, we shall now consider whether the verdict is excessive. Necessarily involved in this question is whether the Court erred in refusing a request of appellant that the measure of damages was the amount of the premiums paid with interest. Appellant contends that this is the limit of recovery but if not, in no event is there any evidence to support a verdict for $1,500.00.

The courts have encountered great difficulty in undertaking to fix the measure of damages for breach of an insurance contract. While we have held that the proper measure of damages under certain circumstances was the amount of premiums paid with interest, *Rogers v. Jefferson Standard Life Insurance Co.,* 182 S. C. 51, 188 S. E. 432; *McLaughlin v. Brotherhood of Railroad Trainmen,* 216 S. C. 233, 57 S. E. (2d) 411, 414, in other cases involving different factual circumstances a different rule was applied. We have never undertaken to lay down an inflexible rule applicable to every situation but have emphasized that the measure of damages for the wrongful breach of an insurance contract must be determined on the facts of each case. In *McLaughlin v. Brotherhood of Railroad Trainmen, supra,* we said: "The nature of the insurance involved, whether the insured is any longer an insurable risk, whether similar insurance in another reputable company is available, and various other factors must be considered. * * * The dominant idea in formulating a rule of damages in any case should be the reimbursement of the insured for the actual loss sustained by him, and the measure of recovery which adheres most closely to that idea is the one that should be adopted."

The leading case on this question is *Pack v. Metropolitan Life Insurance Co.,* 178 S. C. 272, 182 S. E. 747, 749. The Court there said: "What is the measure of actual damages in such case? It is the sum of the premiums which have been paid by the insured, and loss by the lapse of the policy, and, the damage which the plaintiff has sustained by such lapse, to be ascertained, as for example, by ascertaining her life expectancy and the amount she would be required to pay for insurance of like character during such period, but such sum cannot equal the amount of the lapsed policy; and, of course, any special damages which plaintiff has suffered."

All of the policies in the above cases carried life insurance provisions. The amount which the insurer must ultimately pay under such a policy, if kept in force, is certain. The only uncertainty is the time of death. There is a reasonable basis for computing the present value of such a policy at the time of cancellation. The type of policy here involved presents a much more difficult problem. It provides for an accidental death benefit of $1,000.00 and contains a schedule of surgical benefits wherein the insurer agrees to pay certain specified amounts varying from $10.00 to $150.00, for about 68 different types of surgery. It is obvious that some of the rules followed in an action for breach of a life policy are not applicable. It is wholly uncertain whether the insured will die as the result of accident. It is equally speculative as to whether he will ever undergo any of the operations set out in this schedule.

While there are numerous decisions of this Court involving the recovery of actual damages for the breach of a health policy, in none of them were we called upon to pass upon the right to recover benefits which had not accrued and which, in the course of events, might never accrue. In some recovery was allowed for benefits already accrued at the time of cancellation, while in others no question was raised as to the measure of damages.

*Loyal Friends of American Benevolent Association v. Center,* Tex. Civ. App., 49 S. W. (2d) 898, 901, involved

an action to recover damages for breach of a certificate providing for death and burial benefits and also for the payment of a sick benefit of $3.00 a week. In speaking of the damages which might be recovered for breach of the sick benefit provision, the Court said:

"As to this feature of the case, we are of the opinion that the rule applicable thereto is that for all benefits that had accrued prior to the breach of said certificate, or that would accrue after such breach on account of illness contracted by appellee prior thereto, as well as for the period of time that same would probably continue after the rendition of judgment, would be the total amount that appellee would be entitled to recover under the present state of the pleadings. Any further sum on account of anticipated illness during the period of life expectancy would be at best based upon an additional legal fiction, *viz.* that appellee would probably suffer at different intervals attacks of illness lasting for and during certain definite periods of time, so as to secure to appellee sick benefits under the provisions of section (c), *supra,* during her period of life expectancy. This would be unduly presuming a liability upon a presumption; in other words, a presumption upon a presumption. Under the record of this case, to so pyramid presumptions would present an illogical inconsistent situation, *viz.* the presumption of life expectancy for a definite period of time, and the presumption that during that period of time appellee would become sick at different intervals to such an extent as to be confined in bed and require the care of a physician for definite periods of time. This we think would be a legal fiction of rank absurdity, not justified in any respect in order to provide a remedy for the protection of a substantial right, or to prevent the infliction of a wrong."

Also, see *Mid-Continent Life Insurance Co. v. Christian,* 164 Okl. 161, 23 P. (2d) 672.

Of interest is *Caminetti v. Manierre,* 23 Cal. (2d) 94, 142 P. (2d) 741, 743, 749. The Court was there called upon to determine the measure of damages for breach of a non-can-

cellable disability policy where the insurer had become insolvent. The Pacific Mutual Life Insurance Company of California became insolvent and was placed in liquidation, which had the effect of terminating the policy and furnishing the basis for a claim of damages for the breach. Various holders of disability policies filed claims against the insurance commissioner as liquidator. After a very illuminating discussion, the Court concluded that the proper measure of damages was the policyholder's share of the reserve. The decision was restricted to cases where the insurer became insolvent. The Court said: "We do not express any views with respect to the proper measure to be used in life or disability policies where the insurer has repudiated a policy but is not prevented by insolvency from being compelled to continue the insurance."

■ While the mere fact that the determination of future damages may be surrounded with many difficulties does not render the courts impotent to grant relief, the proof must be established with reasonable certainty and probability that damages will result to the person wronged.

■ Applying the foregoing principles to the policy before us, we think it is entirely too speculative to include as damages for the breach of this policy benefits which might never accrue. This is illustrated by the verdict of $1,-500.00 in this case. If a person underwent every one of the 68 operations carried in the schedule, he could only recover $3,280.00. Of this $400.00 are for operations upon a female, leaving only $2,880.00 in the case of a male. The verdict here is over half that amount.

We now examine the record to ascertain if there is any other basis for recovery. The only testimony on the question of damages was the following by respondent:

"Q. Mr. Winchester, have you tried to get other noncancellable insurance? A. I talked about insurance then, yes.

"Q. What information have you received? A. Most all insurance now they require an examination.

"Q. And you are some two and a half years older now, than you were when you took out this other policy? A. That's right.

"Q. And are you able to get insurance without a rider now? A. From what I find, no.

\* \* \*

"Q. You were talking about a bit ago about you couldn't get other insurance, to what Company have you applied for insurance? A. —

"Q. Have you made any applications? A. Life and Casualty.

"Q. Where? A. Spartanburg.

"Q. What office? A. Collecting agent here in Union, Mr. Kingsmore.

"Q. So you made the applications here? A. In Union.

"Q. And what kind of coverage did you apply for? A. Life insurance. Something to offset the redemption mortgage on my house.

"Q. That's life insurance? A. That's right.

"Q. And this policy No. 10494 that you had with Capital wasn't mortgage insurance? A. No, sir.

"Q. It had $1,000.00 accidental death? A. That's right.

"Q. But if you died with natural causes—

"Mr. Jolly: We object, the policy speaks for itself.

"Judge: I think that is an agreement.

"Q. When you applied to Life and Casualty, straight life insurance, for coverage on your house mortgage, you weren't applying for hospital benefit or accidental death? A. They were in there.

"Q. That was not the only kind of benefit you were asking for? A. It was in there.

"Q. You applied to Life to cover you in case you died from any cause? A. That's right, accidental or otherwise.

"Q. Mr. Winchester, you were paying 35¢ a week for this policy No. 10494? A. I believe so.

"Q. Look at the policy, that is the right amount, isn't it? A. Yes.

"Q. Now, do you know what that same coverage would cost you today with another company? A. For $2,500.00 policy, he stated it would be approximately $1.78.

"Q. For the same coverage? A. For $2,500.00.

"Q. And that was for accidental death benefit and hospital and surgical cases? A. No.

"Q. What for? A. Life insurance and accidental death.

"Q. Do you know what it would cost you to get the same coverage you had in this policy? Accidental death and this other insurance? A. I think with this surgical policy alone it was approximately 35¢ or 40¢ with surgical benefits.

"Q. What company was that with? A. Freedom Life, I believe but not certain.

"Q. That was for the same surgical benefits? A. Same.

"Q. Same accidental death benefits? A. That's right.

"Q. You say 35¢ or 40¢? A. Either 35¢ or 40¢.

"Q. And that was the same kind of policy that this policy No. 10494 is? A. May be so or may be not.

"Q. Did you ever apply for a policy with the same benefits? A. I applied for surgical benefits and hospitalization.

"Q. Was it the same as this policy? A. Not as to surgical I am just speaking of part of it.

\* \* \*

"Q. This insurance you saw various people about taking out, that counsel was asking you about, was that insurance non-cancellable? A. No.

"Q. Did you talk to anybody about non-cancellable insurance? A. Offhand I would say no."

Respondent had the burden of proving his damages. It is not shown that a non-cancellable policy of this kind could not be obtained. Nor does the testimony disclose the exact premium now charged for this type of policy. Respondent says he is now several years older and indicates that a policy of this kind would now cost 35¢ or 40¢ weekly, which is substantially the same as the premium on this policy. In a concurring opinion in *Harris v. United Insurance Co.*, 227 S. C. 593, 88 S. E. (2d) 672, 674, Mr.

Justice (now Chief Justice) Stukes, said: "The instant policy provided relatively substantial benefits for accident and sickness; but there was no evidence that plaintiff, who was forty-three years of age at the time of the cancellation, could not have obtained another similar policy; nor was there evidence of the comparative premium cost of such, if obtainable. In this state of the record, there was no evidence upon which the jury could have based a verdict of actual damages for cancellation of the policy in its accident and sickness features."

Respondent has been compensated for the operation he had in March, 1956. There is no contention that a further operation will be necessary. The most favorable view of the testimony is that he cannot now obtain similar insurance without a rider excluding liability for any claims arising from his injured or diseased foot and leg. But we are furnished with no basis for determining the value of the protection which he will lose in this respect. In short, there is nothing on the record before us supporting a recovery of more than the premiums paid with interest. The Court erred in not granting appellant's request to charge to this effect.

We are not concerned on this appeal with punitive damages. In the original complaint respondent alleged a fraudulent breach and sought to recover both actual and punitive damages but the complaint was later amended so as to eliminate all allegations relating to fraud..

Judgment reversed and case remanded for a new trial.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.