## 18948

Marie BELL MARTIN, Respondent, v. Martha S. MOBLEY, Appellant.

(169 S. E. (2d) 278)

*Messrs. Love, Thornton, Arnold & Thomason,* of Greenville, *for Appellant,*

*Clifford F. Gaddy, Jr., Esq.,* of Greenville, *for Respondent,*

July 31, 1969.

Bussey, Justice.

In this action plaintiff-respondent recovered a verdict for actual damages in the amount of $7,500.00 for personal injuries and property damage allegedly sustained in an intersectional collision between two compact automobiles. Defendant appeals from the denial of her motions for a judgment *non obstante veredicto* and for a new trial. Since there is no substantial conflict in the evidence as to the occurrence of the collision, a detailed review of the evidence thereabout would serve no useful purpose. It is necessary to only briefly describe the manner in which the collision occurred.

Such occurred in the City of Greenville on March 10, 1967, at about 11 o'clock A. M., between a Volkswagen, the property of the plaintiff, and an Opel, driven by the defendant. The plaintiff's car, in which she was a passenger, was being driven by her husband in a southerly direction in the westerly lane (next to the curb) of Augusta Street, a four lane street. Defendant was driving the Opel in a northerly direction on Augusta Street in the northbound lane nearest the center line. Defendant made a left turn across the path of plaintiff's vehicle for the purpose of entering Lewis Plaza, a shopping center to the west of Augusta Street, and there was an impact between the front of plainiff's vehicle and the right side of defendant's vehicle.

The intersection was controlled by a traffic light or lights and both vehicles had a green light at the time. The defendant admittedly did not see the plaintiff's vehicle until after the impact and the only reasonable inference from the evidence is that she simply did not look for traffic in the lane occupied by plaintiff's vehicle. The only conflict in the evidence, which we do not regard as of any substantial consequence, is that the defendant contended that three-quarters of her vehicle was in the entrance to the shopping center at the moment of impact, and that it was struck on the right

rear fender. Plaintiff contended that the defendant's vehicle was not that far into the shopping center entrance and that the point of impact thereon was about the right door.

The defendant argues, obviously without real conviction, that there was no evidence of actionable negligence on her part. Suffice it to say that a review of the evidence clearly shows that there is no merit whatever in such contention. The trial judge, of his own motion, refused to submit to the jury the defendant's plea that plaintiff was guilty of contributory negligence and willfulness, and it is now asserted that he was in error in doing so. The principles of law with respect to the duty of a passenger or occupant of an automobile to exercise care to avoid injury are fully set forth in the fairly recent case of *Stone v. Barnes,* 248 S. C. 28, 148 S. E. (2d) 738 (1966), and it will serve no useful purpose to repeat them here. That case is strongly relied upon by the defendant, but it is clearly distinguishable on the facts. In the instant case a careful review of the evidence satisfies us that there is no evidence whatsoever from which it could be reasonably inferred that the plaintiff, in any particular, failed to exercise care for her own safety.

A number of exceptions deal with the evidence as to the extent of the personal injuries sustained by the plaintiff. For a better understanding of the issues, we narrate the following facts as shown by the plaintiff's evidence. In the collision, which occurred on a Friday, the plaintiff was thrown forward by the force of the impact and sustained injuries to her head and her lower back in the area of her right hip, which was badly swollen on the following day with severe pain of the hip and down the right leg into her ankle. She was employed but was on leave during the week in which the accident occurred. Although she suffered considerable discomfort, she returned to work the following Monday morning and did not consult a doctor for some two or three weeks.

As a result of her injuries, she sought and was successful in obtaining lighter work from her employer, and continued to work until about the first of May, but was thereafter unable to work until after July 18th. On that date her husband disappeared, his whereabouts being still unknown at the time of the trial. Plaintiff was left with a 19 year old daughter and a 15 year old son, the latter being dependent upon her for support. Despite her physical complaints, she then was forced to seek employment and did obtain employment, but with a different employer, at lighter work, and at a lesser rate of pay. With minor interruptions, she managed to continue work in such employment until the following December.

In December, she consulted Dr. Coker, a chiropractor, and also a medical doctor about her condition. She did not respond to treatment and was then sent to Dr. Grier, an orthopedic surgeon, who, in January 1968, surgically removed a herniated disc from plaintiff's spinal column. She was discharged by Dr. Grier in March 1968, approximately three and a half months prior to the trial in June 1968.

Plaintiff had admittedly experienced difficulty with her back prior to the accident, but her prior discomfort was limited to the left side of her back and left leg, whereas all of her symptoms following the accident were on the right side, leg, etc. A principal issue upon the trial was whether the injuries sustained in the accident had any causal connection with the herniated disc which was eventually removed, either by aggravation of a pre-existing condition or otherwise.

The defendant objected to the admission of the testimony of Dr. Grier as to surgery performed by him and the evidence as to expenses incident thereto, on the ground that there was not sufficient evidence of causal connection between such and plaintiff's injury in March 1967. In brief, it is urged that the medical evidence as to causal connection does not comply with the "most probable"

rule. The defendant does not challenge the competency of Dr. Coker, the chiropractor, to testify as to causal connection, but does argue that his testimony does not meet the test. Such contention is, we think, clearly without merit. Dr. Coker testified, *inter alia,* with respect to causal connection.

"I would say the accident probably was the most probable cause for the condition."

It is argued that the foregoing is insufficient to comply with the rules, but we find it unnecessary to pass upon this contention. Overlooked by the defendant is other testimony of Dr. Coker. In summation and in response to a question as to whether there was a reasonable medical certainty as to what was the cause of plaintiff's herniated disc, Dr. Coker responded as follows:

"That's right. It was just reasonable for me to assume and what my findings and everything—I don't have any doubt the accident was the cause."

The foregoing clearly shows that in the opinion of Dr. Coker the accident was not only the most probable cause of plaintiff's condition, but that it was actually the cause.

Although Dr. Grier was unwilling to state specifically that the accident was the cause, or the most probable cause, of the herniated disc condition, he nowhere challenged or disputed Dr. Coker's opinion thereabout. To the contrary, an analysis of his entire testimony gives rise to the reasonable inference that Dr. Grier was rather inclined to agree with Dr. Coker's opinion as to causation.

Defendant also argues that Dr. Grier should not have been permitted to testify as to the percentage of permanent disability which generally follows the type of surgery he performed upon the plaintiff. Dr. Grier admittedly had no opportunity to further examine the plaintiff between the time of her discharge by him, in March 1968, and the trial, in June 1968, for the purpose of forming an opinion as to the extent of resulting permanent dis-

ability of the plaintiff. He was asked whether he had an opinion as to the extent of permanent disability of the plaintiff, to which he replied that it would have to be a general opinion and, over objection, he was allowed to testify as follows:

"These patients have a general disability in the neighborhood of ten or fifteen percent disability following this type of surgery."

We think there was no error in the admission of the foregoing testimony. The fact that the doctor had not had opportunity to consider whether the plaintiff's permanent disability was more or less than that which generally followed such a condition and operation affected, we think, only the weight and not the admissibility of the proffered evidence.

In the cases of *Mullinax v. Great Atlantic & Pacific Tea Co.*, 221 S. C. 433, 70 S. E. (2d) 911 (1952), and *Merrill v. Barton*, 250 S. C. 193, 156 S. E. (2d) 862 (1967), this court has quoted with approval from 25A C. J. S. Damages § 146, p. 28, and applied the following rule:

"In personal injury actions great latitude is allowed in the introduction of evidence to aid in determining the extent of the damages; and as a broad general rule any evidence which tends to establish the nature, character, and extent of injuries which are the natural and proximate consequences of defendant's acts is admissible in such actions, if otherwise competent."

The plaintiff was not under the care of a doctor from May through August following the accident, and the defendant contends that the court erred in permitting her to explain why she had not been attended by a doctor during those months. Over the objection of the defendant, plaintiff was allowed to testify as follows:

"I kept thinking the condition of my back might clear up I couldn't afford to go to a doctor, to pay medical expenses. And then after July, I had a son to support, and I had to work."

The ground of the objection was that any explanation of her failure to seek medical attention during those months would be "self serving", which ground is not here pursued. It is now urged, however, for the first time, that her reference to having a son to support was irrelevant and prejudicial, in that it tended to gain plaintiff the sympathy of the jury. The contention is not timely made and, moreover, the plaintiff, previously and without objection, had gone fully into her family situation, including the support of her son. Under such circumstances, the present contention is clearly without merit.

Finally, the defendant urges that there was error in refusing to charge her request to charge number 2. We deem it unnecessary to set forth the language of the request, it being sufficient to say that a review of His Honor's charge shows that the principles embodied in the request were fully covered in the general charge.

All exceptions of the appellant are without merit, and the judgment of the lower court is, accordingly,

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.