19370

Jon Franklin HALTIWANGER, Respondent, v. Capers G. BARR, III, as Administrator of the Estate of David D. Brunant, Appellant.

(186 S. E. (2d) 819)

*Joseph R. Young, Esq.,* of *Young, Clement & Rivers,* of Charleston, *for Appellant,*

*Thomas D. Wise, Esq.,* of *Way, Burkett & Wise,* of Charleston, *for the Respondent,*

February 15, 1972.

LITTLEJOHN, Justice:

This tort action was brought by the respondent to recover from the appellant for property loss and personal injuries received in an automobile collision on November 16, 1968. The respondent moved for summary judgment as to liability which was granted. The question of the amount of actual damages was submitted to the jury, which returned a verdict for $64,000. Thereafter the appellant moved for a new trial or a new trial *nisi* in the alternative, both of which were refused. This appeal followed.

The property damages and injuries were sustained when appellant's intestate, David D. Brunant, crossed three lanes and the median of a four-lane highway and crashed head-on with the respondent's vehicle. The impact was so violent that both cars were completely demolishd. Brunant was killed instantly, and the respondent sustained serious injuries, including a permanent injury to his back.

The sole issue for determination by this Court is whether the verdict was so excessive as to show capriciousness and prejudice on the part of the jury.

The complaint alleged "serious and permanent personal injuries." It also alleged and sought recovery for the loss of an 18 foot boat, a motor, a trailer, and items of personal property.

As we review the evidence for the purpose of determining whether the lower court erred as a matter of law in failing to hold that the verdict was the result of prejudice and caprice, we keep in mind the fact that it became the duty of the jury to estimate, as best it could, the future damages which are reasonably certain to accrue to the respondent. The trial was respondent's only day in court as relates to any claim against the appellant arising out of the unfortunate collision. We also keep in mind the fact that the issue is, in the first analysis, one for the trial judge who

heard all of the testimony and was in a better position to rule upon it than is this Court.

We held in *Nelson v. C. & W. Carolina Rwy. Co.,* 226 S. C. 516, 86 S. E. (2d) 56 (1955);

". . . [T]his court will not undertake to set aside a verdict because its amount is such as to indicate merely undue liberality on the part of the jury. The power in such case to set it aside, or reduce it by granting a new trial *nisi,* rests with the trial judge alone. It is only when the verdict is so grossly excessive as to indicate that the jury was moved by passion or prejudice or other considerations not founded on the evidence and the instructions of the trial court, that it becomes the duty of this court, as well as of the trial court, to set it aside absolutely."

Under the facts as revealed by the record before us, we refuse to disturb the verdict.

The respondent was 32 years of age, married, and had three children at the time of the collision. He enjoyed generally good health. He was regularly employed as a repairman and maintenance man for a duplicating machine concern, at a salary of $570 per month. In his work he was required to carry a 35-pound bag of tools, and to move various machines ranging from 35 to 700 or 800 pounds. After the accident he was fired because of his inability to carry on his usual duties, but was later rehired on a trial basis. He has no other training or skill which might allow him to pursue other specialized occupations.

In determining whether the amount of the verdict resulted from prejudice and caprice we keep in mind that it is the duty of the jury to weigh the evidence and judge the credibility of the witnesses.

Respondent testified that he was hospitalized for four days following the collision. Thereafter, he saw doctors frequently. On August 2, 1970, he returned to the hospital for 21 days; about one and one-half to two weeks of this time he was in traction. He continues to suffer and wears a back

brace about one-half of the time. He is not able to do his work as well as previously, and is limited in his usual activities. He testified to property loss in the amount of $3,635, medical expense of $1,376, and loss of income of $1,020, for a total of $6,031.

Doctors Siegling and Paulling, orthopedic specialists, testified that the respondent's condition is permanent. They indicated that traction provides only temporary relief and recurrences of pain should be expected.

Dr. Siegling, utilizing widely recognized American Medical Association rating guides, concluded that the respondent's residual permanent impairment to his spine was 15%.

Dr. Paulling testified as follows:

"Q. And Doctor, what alternative does he have with regards to correcting this particular injury?

"A. Well, I believe I have already mentioned those; namely, wearing a back support which he is doing, though there is a more rigid one that he could use; change in occupation to one of a lighter more sedantry (*sic*) nature; and the third would be, and I don't think it's indicated at this present level of his symptoms, but if they were to get worse, then he might consider a final (*sic*) fusion.

"Q. Doctor, what is involved in a spinal fusion, please, sir?

"A. Well, it is the use of bone grafts to make one or more of the joints in the spine stiff.

"Q. And approximately how long would Mr. Haltiwanger be convalescing from an operation of this type?

"A. Well, this varies from surgeon to surgeon, but I can only give you my routine and that would be three months in bed in a cast; three months in a chairback brace, ambulatory; and six months in a corset such as he is wearing now ambulatory.

"Q. Doctor, is there any guarantee that if he continues to wear the corset that he will not have his back problem?

"A. No."

It was the testimony of the respondent's wife that she had observed her husband in pain and noticed a change in his ability to play with the children and do odd jobs around the house.

Witness Bails tesitfied that the respondent had a change of personality. He also testified that he had observed the respondent in pain.

Dr. E. P. Hickman, a professor of economics at the University of South Carolina, testified relative to respondent's future earning capacity. Based on his calculations respondent might lose up to $26,000 by reason of impairment of health.

The matters which counsel for the appellant call to our attention, such as the fact that respondent had experienced a raise in salary, and such as the fact that 15% impairment of the spine is not necessarily equivalent to 15% in loss of wages, and such as the fact that he continues to fish, were for the jury to consider.

The whole of the evidence supports the inference that the respondent has suffered a serious and permanent back injury. A man 32 years of age has a life expectancy of 39.43 years. We cannot say that the jury's evaluation of the losses, property and personal, past, present and future, was such as to indicate passion, prejudice and caprice. It became the duty of the jury to apply the following rule of law to the evidence:

"In a personal injury action, the plaintiff must recover for all injuries, past and prospective, which arose and will arise from the defendant's tortious activity. Thus, recovery must be had for future pain and suffering, and for the reasonable value of medical services and impaired earning capacity, to the extent that these injuries are reasonably certain to result in the future from the injury complained of." 22 Am. Jur. Damages § 27.

The rule is not always easy to apply. Future damages in personal injury cases need not be proved to a mathematical certainty. Oftentimes a verdict in-

volving future damages must be approximated. A wide latitude is allowed the jury.

The contention that the verdict was against the weight of the evidence, and that it was so excessive as to show caprice and prejudice cannot be sustained.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.