## 20233

Myrtle H. ARMSTRONG, Executrix of the Estate of T. O. Armstrong, Appellant, v. Andrew J. WEILAND, M.D., Respondent.

(225 S. E. (2d) 851)

*E. Graydon Shuford, Esq.,* of Decatur, Georgia, *for Appellant,*

*Douglas McKay, Jr., Esq.,* of Columbia, *for Respondent,*

June 8, 1976.

LITTLEJOHN, Justice:

In March 1972, T. O. Armstrong brought this malpractice action, alleging injuries proximately caused by the negligence of the defendant, a medical doctor, in treating him at the emergency room of the Columbia Hospital in January 1972. Mr. Armstrong died in March 1975, before the case was tried, and his widow, as executrix (plaintiff), has been substituted as party plaintiff.

Upon the trial of the case, the judge granted the defendant's motion for a nonsuit, ruling that plaintiff's evidence, although creating a jury issue as to negligence, failed to establish that such proximately caused the injuries alleged.

Plaintiff has appealed the order granting the nonsuit. We affirm.

She has also alleged error and raised other questions pertaining to the court's ruling relative to hypothetical questions which her counsel attempted to ask her expert witness, a medical doctor from Charleston. The exceptions relating to this asserted error are too vague and fail to point out specific errors of law, as required by Supreme Court Rule 4, § 6, and therefore need not be considered. However, a review of the evidentiary rulings indicates no prejudice to the plaintiff.

The complaint alleges that Mr. Armstrong went to the emergency room of the Columbia Hospital and was treated by the defendant for pneumonia; that defendant prescribed certain drugs for his treatment which interacted with medicine which he was already taking for a heart condition, and that as a result of the interaction of the two medicines Mr.

Armstrong suffered "numerous heart attacks as well as extensive, prolonged and severe internal bleeding;" that such was proximately caused by the negligence of the defendant, all of which should have been foreseen.

The defendant interposed a general denial. He alleged that the medicine, erythromycin, given Mr. Armstrong by the defendant to treat his pneumonia, is not expected to interact adversely with coumadin, a blood-thinning drug which he was already taking; that the medication prescribed was proper emergency treatment for pneumonia, and that there was no negligence on his part proximately causing injury.

Plaintiff's evidence consisted primarily of her own testimony and that of a Charleston physician, who had never treated the patient. In addition, there was introduced into evidence the printed inserts packaged with the medicine taken by Mr. Armstrong.

Plaintiff, in testimony, explained that she had taken her husband to the hospital for treatment of a cold; that the defendant diagnosed the ailment as pneumonia and prescribed erythromycin, an antibiotic. She said that the defendant was told that Mr. Armstrong was taking coumadin, an anticoagulant, for his heart condition, but he gave no indication of any possible adverse effects from taking the two drugs. Defendant gave the patient a prescription for ten days supply of erythromycin and permitted him to return home. About three days thereafter, Mr. Armstrong developed a knot in his stomach, which gradually enlarged, and the skin around it became black in color. Ten days later, he went to his physician, who admitted him to the hospital for tests. He returned home and the black discoloration and knot disappeared after about six months. From the time Mr. Armstrong was treated by the defendant at the emergency room in January 1972 until his death in March 1975, he was hospitalized five times; all, except the first time, were for heart trouble.

On cross-examination, plaintiff admitted that her husband had been in a serious accident in 1968, which caused him to contract phlebitis and required surgery; that he had undergone surgery for diverticulitis, and that he suffered a severe heart attack in 1969.

As indicated hereinabove, the trial judge granted the motion for a nonsuit solely because the plaintiff failed to introduce evidence from which proximate cause could be inferred. Therefore, we will not review the evidence except as it relates to the issue of proximate cause, in our determination of whether the lower court erred.

It is elementary that in ruling on a motion for a nonsuit, the court must consider plaintiff's evidence in the light most favorable to her and unless the evidence gives rise to more than conjecture or speculation, the motion must be granted.

It was incumbent upon plaintiff to establish proximate cause as well as negligence. *Bessinger v. DeLoach,* 230 S. C. 1, 94 S. E. (2d) 3 (1956). Her efforts to establish proximate cause rested understandably upon the expert testimony of the Charleston doctor. There was no testimony from any doctor who had ever treated Mr. Armstrong.

When the testimony of an expert witness is not relied upon to establish proximate cause, it is sufficient for plaintiff to put forth some evidence which rises above mere speculation or conjecture; however, when the opinions of medical experts are relied upon to establish causal connection of negligence to injury, the proper test to be applied is that the expert must, with reasonable certainty, state that in his professional opinion the injuries complained of *most probably* resulted from the alleged negligence of the defendant. *See Gambrell v. Burleson,* 252 S. C. 98, 165 S. E. (2d) 622 (1969); *Cross v. Concrete Materials,* 236 S. C. 440, 114 S. E. (2d) 828 (1960).

There is no evidence that coumadin and erythromycin interact adversely, as a matter of medical knowledge, so as to cause hemorrhaging or heart disease.

On cross-examination, plaintiff's medical expert testified as follows:

"Q. Are you aware of any instance reported in pharmacology or accepted medical-doctor literature that erythromycin as it existed in 1972 under many brand names had any reaction whatsoever with coumadin?

"A. I think the nearest you could say to that would be hypatic reactions reported by the F. D. A.

"Q. Let's be a little more specific than that. What kind of hypatic reactions are we talking about?

"A. Toxicity—this is also part of the chain of vitamin K formation. The second thing is that any doctor—

"Q. Doctor, you're getting away from my question.
"A. No, sir, I'll answer the question.

"Q. Have you found any publication where any instance has been reported by any reputable or recognized service of erythromycin reacting adversely with coumadin?
"A. No."

We find no error in the ruling of the lower court, and the order granting the nonsuit is

Affirmed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.