524 S.E.2d 108

**Belinda Sue PEARSON, Respondent,**

v.

**Tommy L. BRIDGES, M.D., Appellant.**

**No. 3070.**

Court of Appeals of South Carolina.

Heard May 12, 1999.

Decided Nov. 8, 1999.

Rehearing Denied Dec. 25, 1999.

---

Gregory A. Morton and Ashby W. Davis, both of Donnan, Morton, Davis & Snyder, of Greenville, for appellant.

Larry C. Brandt, of Walhalla, for respondent.

STILWELL, Judge:

In this medical malpractice case, Tommy L. Bridges, M.D. appeals the trial court's decision to admit evidence of four possible scenarios regarding Belinda Sue Pearson's future medical needs and expenses. Bridges claims the trial court erred in admitting evidence of future medical expenses that did not reach the "most probable" standard for admissibility. We affirm.

## FACTS

Pearson sued Bridges for medical malpractice after complications from gallbladder surgery. During laparoscopic surgery in May 1992, Bridges cut the common bile duct instead of the cystic duct as intended. He then had to convert the surgery to an open procedure and attempted to repair the common bile duct. After the repair and the surgery were finished, a narrowing caused by the buildup of scar tissue known as a "stricture" formed in the area where the bile duct had been cut. Bridges performed another surgery to correct this problem, and a stent was placed in the bile duct. This stent became unseated and had to be removed.

Pearson was then referred to Dr. John Galloway at Emory University. During surgery in September 1993, Dr. Galloway placed another stent in Pearson's bile duct. The stent was removed in April 1994 but the duct strictured once again and another stent was inserted during another surgery. This stent was not removed until November 1995.

At trial, evidence was presented to show medical costs, pain and suffering, and future medical costs. The present and past medical costs amounted to $123,902.72. There was also evidence introduced that Pearson incurred lost wages of $64,131.93. Pearson testified as to her pain and suffering during the many months of recovery from the numerous surgeries. She testified to (1) having tubes in her side; (2) having to have others help her with common everyday tasks, such as using the bathroom; and (3) medical problems such as high fevers and jaundice.

Dr. Galloway testified as to four possible scenarios regarding Pearson's required future medical care. An economist, Dr. Richard G. Thompson, assigned monetary values to the potential scenarios. The possible scenarios introduced at trial were:

Scenario One: Continual monitoring of Pearson's condition to prevent any more strictures and complications. Projected cost: $9473.78.

Scenario Two: If the duct restrictured, another cholangioplasty would need to be performed. Projected cost: $20,107.56.

Scenario Three: If scenario two failed and surgery was required. Projected cost: $38,683.62.

Scenario Four: If scenarios two and three failed, Pearson would need a full liver transplant. Projected cost: $237,128.39.

Bridges objected to all testimony other than scenario one on the grounds that it did not meet the "most probable to happen" standard and was inadmissible. The trial court overruled the objection and allowed evidence of all four scenarios.

At trial, the jury awarded Pearson $755,000 in damages in a general verdict. Bridges does not appeal the finding of liability. After the jury verdict, Bridges moved for a new trial *nisi remittitur*, a new trial absolute, and judgment notwithstanding the verdict. He alleged that the testimony regarding the possible scenarios was prejudicial and that the jury's verdict was reached based upon speculation and conjecture. The trial court denied all Bridges's motions.

528

## DISCUSSION

██ Bridges argues that the evidence and testimony regarding scenarios two, three, and four were inadmissible because they do not meet the most probable standard, thereby causing the jury's verdict to be based upon conjecture and surmise. We disagree.

██ Clearly, the most probable rule applies to testimony given by a medical expert to establish proximate cause in a medical malpractice case. *Ellis v. Oliver,* 323 S.C. 121, 473 S.E.2d 793 (1996). What is less clear, however, is the standard of proof required before future medical expenses may be admitted at trial.[1]

Under South Carolina common law, future damages are generally allowed in personal injury and medical malpractice cases. *See Haltiwanger v. Barr,* 258 S.C. 27, 186 S.E.2d 819 (1972) (holding that future damages may be recovered in a personal injury action so long as the damages are reasonably certain to result in the future from the injury); *see also Ward v. Epting,* 290 S.C. 547, 351 S.E.2d 867 (Ct.App.1986) (holding that evidence of loss of future earnings admissible in a medical malpractice case).

Bridges asserts that the standard of proof required to admit evidence of future damages is the same as that required to prove causation. We disagree. *See Armstrong v. Weiland,* 267 S.C. 12, 16, 225 S.E.2d 851, 853 (1976) ("When the testimony of an expert witness is not relied upon to establish proximate cause, it is sufficient for plaintiff to put forth some evidence which rises above mere speculation or conjecture. . . .").

In 1995, the court of appeals held that the most probable rule did not apply to expert testimony offered for reasons

---

1. An A.L.R. article on the subject states:

> Although all courts agree that it would be improper to award damages covering future medical expenses without evidence showing some degree of certainty, probability, or possibility that the plaintiff's treatment will continue into the future, the courts do not agree as to the degree of certainty required.

Danny R. Veilleux, Annotation, *Sufficiency of Evidence to Prove Future Medical Expenses as Result of Injury to Back, Neck or Spine,* 26 A.L.R.5th 401, 425–26 (1995).

other than to prove proximate cause. *Payton v. Kearse*, 319 S.C. 188, 210, 460 S.E.2d 220, 233 (Ct.App.1995). Even though it found the trial court wrongly excluded the expert's testimony, the court of appeals did not reverse because it found the expert's testimony cumulative and the error, therefore, harmless. *Id.* at 211, 460 S.E.2d at 233.

In reversing the decision of the court of appeals, the supreme court found that the trial court properly excluded the expert's testimony because it was "only relevant to the issue of causation." *Payton v. Kearse*, 329 S.C. 51, 61, 495 S.E.2d 205, 211 (1998). The supreme court did not comment on the court of appeals's holding that the most probable rule did not apply to expert testimony offered for reasons other than to prove proximate cause.

■ Therefore, expert testimony admitted to prove future damages need not meet the most probable standard. To be admissible, "[f]uture damages do not need to be proved to a mathematical certainty. Oftentimes a verdict involving future damages must be approximated. A wide latitude is allowed the jury." *Haltiwanger*, 258 S.C. at 32–33, 186 S.E.2d at 821.

Early South Carolina law held that evidence regarding future damages was required to be established with "reasonable certainty." *Green v. Catawba Power Co.*, 75 S.C. 102, 55 S.E. 125 (1906).

A later South Carolina case, however, held that expert medical testimony regarding future consequences of an injury was permitted where such testimony satisfied the rule against speculation and was otherwise admissible. *Martin v. Mobley*, 253 S.C. 103, 169 S.E.2d 278 (1969); *see* Phillip E. Hassman, Annotation, *Admissibility of Expert Medical Testimony as to Future Consequences of Injury as Affected by Expression in Terms of Probability or Possibility*, 75 A.L.R.3d 9, 24 (1977) (citing *Martin* for the proposition that South Carolina common law follows the most lenient admissibility rule regarding such testimony—the "rule permitting all pertinent testimony except speculation.").[2]

---

**2.** The article differentiates between the *admissibility of testimony* of future damages and the amount of evidence needed to *prove causation.* Hassman, *supra*, at 16.

We think a fair reading of South Carolina law illustrates that reasonable certainty is evidence that is beyond mere speculation and conjecture but less than that required by the most probable standard to prove proximate cause. *See Ellis v. Oliver,* 323 S.C. 121, 125, 473 S.E.2d 793, 795 (1996) (In medical malpractice case, distinguishing the reasonable certainty requirement of an expert in stating his opinion from the most probable standard necessary to prove causation.); *see also Mali v. Odom,* 295 S.C. 78, 367 S.E.2d 166 (Ct.App.1988) (holding estimates inadmissible as evidence of future lost profits because they made no reference to any particular standard of fixed estimation method or any operational history and therefore, were speculative).

In personal injury actions, great latitude is allowed in the introduction of evidence to aid in determining the extent of damages; and as a broad general rule, any evidence which tends to establish the nature, character, and extent of injuries which are the natural and proximate consequences of defendant's acts is admissible, if otherwise competent. *Martin,* 253 S.C. at 103, 169 S.E.2d at 278.

In *Martin,* the supreme court affirmed the trial court when it allowed the plaintiff's expert witness to testify that, generally, a patient sustains a 15% permanent disability following surgery to repair a herniated disc. *Id.* at 107, 169 S.E.2d at 280. Although the witness was the physician who had performed the surgery, he had not subsequently examined the plaintiff to determine the extent of her permanent disability. *Id.* at 108–09, 169 S.E.2d at 281. The court held that the fact that the doctor had not had the opportunity to consider whether the plaintiff's permanent disability was more or less than that which generally followed such a condition and operation affected only the weight, and not the admissibility, of the proffered evidence. *Id.* at 109, 169 S.E.2d at 281.

In a personal injury case, the trial court permitted an expert physician to testify that the plaintiff's leg would be "more prone" to circulation problems because of extensive scarring. *Campbell v. Paschal,* 290 S.C. 1, 15, 347 S.E.2d 892, 900 (Ct.App.1986). The defendant contested the trial court's decision to admit testimony regarding the plaintiff's future medical expenses on the ground that there was insufficient

evidence regarding them to let the court submit it to the jury. *Id.* The court of appeals held that evidence that the plaintiff suffered recurring pain and tenderness in his leg and that he was likely to suffer circulation problems in the future was sufficient to sustain an award that included future damages. *Id.* at 15, 347 S.E.2d at 901.

In a medical malpractice case, the court of appeals affirmed the trial court's decision to admit evidence of lost future earnings even though the defendant claimed such evidence was speculative. *Ward. v. Epting,* 290 S.C. 547, 558, 351 S.E.2d 867, 873 (Ct.App.1986). In *Ward,* the deceased's husband testified that the deceased intended to return to work once their son, ten weeks old at the time of her death, was six months old. *Id.* The deceased's former employer was also permitted to testify that he intended to rehire the deceased. *Id.*

In another medical malpractice case, the court of appeals determined that an expert economist had a "sufficient" basis to calculate present cost of future medical supplies needed for the plaintiff but did not mention any requirement for such evidence to meet the most probable standard. *James v. Lister,* 331 S.C. 277, 500 S.E.2d 198 (Ct.App.1998), *cert. denied* (Mar. 5, 1999).

A question of future damages was held properly submitted to a jury where the expert physician testified the plaintiff "may need further treatment in the future." *Daniels v. Bernard,* 270 S.C. 51, 56, 240 S.E.2d 518, 520 (1978). In fact, the supreme court held that the plaintiff's testimony alone was evidence of future pain and suffering sufficient to send the issue of future damages to the jury. *Id.*

A persuasive case regarding testimony that included different scenarios for future damages is *International Wood Processors v. Power Dry, Inc.,* 593 F.Supp. 710 (D.S.C.1984), *aff'd,* 792 F.2d 416 (4th Cir.1986). In this antitrust case, the district court permitted an expert witness to testify regarding lost future profits. The expert presented two different financial forecasts for a ten-year period. On appeal, the appellant claimed this was error because the respondent failed to prove damages were "capable of reasonable ascertainment." *International Wood,* 792 F.2d at 431. The Fourth Circuit Court of

Appeals disagreed and held that the trial court adequately considered the expert's assumptions and the jury reasonably could have accepted the expert's projections. *Id.*

■ Here, the trial court permitted Dr. Galloway to testify regarding four possible future scenarios. Dr. Galloway made it clear that scenario one was the most likely case scenario while scenario four was the least likely case scenario. Dr. Galloway stated that Pearson's condition would definitely require monitoring for the rest of her life. He stated that there was a 25–30% chance of restricturing of the common bile duct, thus necessitating the need for at least scenario two. In discussing scenario four, Dr. Galloway testified that much would have to go wrong before a liver transplant would be required, but he could not say that it was certain not to happen. On the other hand, Bridge's expert witness testified that in his opinion Pearson would never require a liver transplant.

The jury was provided with evidence of the four scenarios, and both sides had ample opportunity to discuss the likelihood of each scenario occurring. This evidence was properly submitted to the jury for its consideration. *See Kelly v. Brazell,* 253 S.C. 564, 567–68, 172 S.E.2d 304, 306 (1970) ("[T]he fact that future medical expense . . . are difficult to estimate would not deprive the plaintiff of the right to have the jury determine whether any award for future medical be made, and if so, what amount. The trial judge charged the jury that an award could not be based on speculation and that damages must be proved by the preponderance of the evidence. He also left it to the jury to determine whether need of future treatment had been proved.").

There was no speculation as to the cost involved in any future scenario that might occur. Rather, the question left to the jury to decide was which, if any, of the scenarios would come to pass. As our supreme court has indicated in *Halti-wanger,* a trial is the claimant's only day in court to recover such damages, present and future, as the jury determines are reasonably certain to accrue. *Haltiwanger v. Barr,* 258 S.C. 27, 32–33, 186 S.E.2d 819, 821 (1972).

Here, the trial court instructed the jury that Pearson was not entitled to recover conjectural or speculative damages and

was only entitled to future damages that were "reasonably certain to occur in the future." The trial court stated Pearson was entitled to damages "susceptible to ascertainment with a reasonable certainty" but that she did not have to prove such damages with mathematical certainty. This is the correct law in South Carolina. *See Carlyle v. Tuomey Hosp.*, 305 S.C. 187, 407 S.E.2d 630 (1991) (The jury must be presented with all evidence from which it can make a logical, well informed decision. A jury's verdict cannot "be left to conjecture, guess or speculation.") (quoting *Gray v. Southern Facilities, Inc.*, 256 S.C. 558, 183 S.E.2d 438 (1971)); *see also Winchester v. United Ins. Co.*, 231 S.C. 462, 470, 99 S.E.2d 28, 32 (1957) ("While the mere fact that the determination of future damages may be surrounded with many difficulties does not render the courts impotent to grant relief, the proof must be established with reasonable certainty and probability that damages will result to the person wronged.").

In summary, we hold that the most probable standard required to prove causation is not the standard to be applied in determining the admissibility of evidence of future damages. Rather, the evidence must be beyond speculation or conjecture and reasonably certain to occur.[3]

For the foregoing reasons, the decision of the circuit court is **AFFIRMED.**

CURETON, J., concurs.

ANDERSON, J., dissents in a separate opinion.

ANDERSON, Judge (dissenting):

I respectfully dissent. The majority concludes the "most probable" standard required to prove causation is not the standard to be applied in determining the admissibility of evidence of future damages. I disagree.

The trial court permitted Dr. Galloway to testify as to four possible scenarios [1] regarding Pearson's required future medical care:

---

**3.** Bridges does not argue that under the "reasonably certain to occur" standard the evidence in question was inadmissible.

**1.** All testimony beyond scenario one was objected to by Dr. Bridges on the grounds that it did not meet the "most probable to happen"

Scenario One: Continual monitoring of Pearson's condition to prevent any more strictures and complications.

Scenario Two: If the duct restrictured, another cholangioplasty would need to be performed.

Scenario Three: If scenario two failed and surgery was required.

Scenario Four: If scenarios two and three failed, Pearson would need a full liver transplant.

A paradigm of medical mathematical endeavors is presented by the testimony of Dr. Douglas Olsen:

Q. [T]hat was common bile duct injury, wasn't it?

A. That is correct.

. . . .

Q. That patient *also* [had] a *20 to 30 percent chance* of restriction?

A. Yeah, depending on whose numbers, 15 to 20, like to use nice broad category.

Q. You said if it is 15 fine, 35 fine, you gave it 20 to 30?

A. Yeah, somewhere in that ballpark range.

Dr. Olsen's testimony is juxtaposed to Dr. Galloway's:

Q. Why will you need to keep checking her? Are we still worried about a stricture occurring?

A. The, the chances that the stricture can come back will, you know, be there for an indefinite amount of time. The percentage is based on, you know, what little factual data we have here. You know, from the, starting from the last time she had the tubes pulled out she probably has, you know, *25 to 30 percent chance* of re-stricture rate and over the next five years following that.

Dr. Galloway declared Pearson's condition will definitely require monitoring for the rest of her life. He opined there was a 25–30% chance of restricturing of the common bile duct, thus necessitating the need for at least scenario two. In discussing scenario four, Dr. Galloway stated much would have to go wrong before a liver transplant would be required. Yet, he could not say scenario four was certain not to happen. Dr.

standard and was inadmissible. The judge overruled the objection and allowed evidence of all four scenarios.

Bridges's expert witness testified that in his opinion Pearson would never require a liver transplant.

There is no case in South Carolina supporting the holding of the majority in permitting the contested evidence on damages in this case. The majority cites *Payton v. Kearse*, 319 S.C. 188, 460 S.E.2d 220 (Ct.App.1995), *Haltiwanger v. Barr*, 258 S.C. 27, 186 S.E.2d 819 (1972), *Green v. Catawba Power Co.*, 75 S.C. 102, 55 S.E. 125 (1906), and *Martin v. Mobley*, 253 S.C. 103, 169 S.E.2d 278 (1969), as support for the admission of the damages evidence. These cases do *not* address the *issue* involved in this litigation. Apodictically, the principles articulated by the cited precedent are recognized without question. *Payton* states the "most probable 'rule" does not apply to expert testimony offered for reasons other than proof of proximate cause. *Haltiwanger* simply says "[f]uture damages do not need to be proved to a mathematical certainty." *Id.* at 32, 186 S.E.2d at 821. *Green* mandates a charge that future damages must be proven with "reasonable certainty." Despite an opinion emanating from a commentator, *Martin* is not dispositive in regard to the challenged evidence.

Academically, courts in this country are divided as to "the degree of certainty required for an award of future medical expenses." 22 Am.Jur.2d Damages § 217 (1988). Some courts enunciate the test for recovery of damages for future medical care in terms of "probability" or "medical probability." *Id.* § 219. Concomitantly, an injured party may recover future medical expenses where there has been expert testimony as to the probability of continued treatment and medication. *Id.* Other courts utilize terms of "reasonable probability," "more probable than not," or a closely synonymous phrase as the evidentiary yardstick for recovery of damages for future medical care. The rule espoused in the opinion of the majority is that the "most probable" standard is not efficacious in considering the admissibility of evidence of future damages. Admittedly, some courts do follow this approach by allowing evidence of future medical expenses to be bottomed and premised upon a *"possibility."* *Id.* § 221.

The use of evidentiary scenarios embracing "possibilities" or mathematical percentages that violate the "most probable rule" constitutes "judicial lotto." A welter of confusion results

from the failure to apply the "most probable rule" to the admissibility of evidence on damages. The quintessential imbroglio involving the admissibility of evidence on damages is the nadir of the percentage factor. How low will the percentage factor go? In this case, it is "bench marked" at 20%. What about 5%? Is there an evidentiary "safety valve" to eliminate the rankest of verdict speculation?

The abandonment of the "most probable rule" as the test for admissibility of evidence on future medical expenses opens Pandora's box to the vagaries of evidence having its etiology in uncertainty, ambiguity, and arbitrariness. The admissibility of this evidence obliterates the judicial equipoise inter sese plaintiff and defendant to the point of fundamental unfairness. A defendant should *not* be subjected to the vicissitudes of a damage verdict based upon gross speculation.

The rule adopted by the majority destroys the gatekeeper role of trial judges in guarding against the imposition of damages in violation of the "most probable rule." The evisceration of the "most probable rule" in the damage arena will judicially blight the pristine concept of a fair and impartial verdict. A defendant stands mercilessly in the face of testimony emanating from a plaintiff who rings the jury "empathy bell."

The retreat by the majority from established evidentiary standards leaves a gargantuan aperture in the presentation of "damage evidence" to the fact finder. This holding is a harbinger of "damage evidence obfuscation" in the field of damages. Indubitably, the appellate court will rue the day that a landmark rule was eliminated as a protective barrier against "verdict uncertainty." In a utilitarian sense, parties will be at liberty to shape innumerable and unlimited scenarios as justification for future medical expenditures.

A plethora of policy considerations are triggered in this decision. My concernment is that the integrity of the system will be at risk if there is a lack of a definite and certain rule in the area of admissibility of evidence on future medical expenses. Today we lift the hallowed bar against suppositional medical evidence to prove future medical expenses. The majority marches forth into the zone of fortuitous and undivinable admissibility.

I would hold the "most probable rule" is the standard for admissibility of evidence in regard to future medical expenses.