544 S.E.2d 617

**Belinda Sue PEARSON, Respondent,**

v.

**Tommy L. BRIDGES, M.D., Petitioner.**

No. 25263.

Supreme Court of South Carolina.

Heard Feb. 20, 2001.

Decided March 19, 2001.

Rehearing Denied April 26, 2001.

Gregory A. Morton and Ashby W. Davis, both of Donnan, Morton, Davis & Snyder, P.A., of Greenville, for petitioner.

Larry C. Brandt, P.A., of Walhalla, for respondent.

TOAL, Chief Justice:

We granted certiorari in this medical malpractice action to review the Court of Appeals' decision upholding the jury's $755,000 damage award to Belinda Sue Pearson ("Pearson").

## FACTUAL/PROCEDURAL BACKGROUND

On May 1, 1992, Dr. Tommy L. Bridges ("Dr. Bridges") examined Pearson, then a twenty-six year old, who had known problems with gallstones. Dr. Bridges recommended Pearson have her gallbladder removed. Because it was less painful and recovery time was shorter, Dr. Bridges recommended a laparoscopic surgery instead of an open procedure. During the laparoscopic gallbladder surgery on May 6, 1992, Dr. Bridges mistakenly cut the common bile duct instead of the cystic duct. After realizing the mistake, Dr. Bridges converted the surgery to an open procedure, and attempted to repair the common bile duct by inserting a stent. After the surgery, a stricture [1] formed where the bile duct had been cut, necessitating a second surgery by Dr. Bridges in early November 1992 to redo the repair and again stent the bile duct.

Pearson was referred to another doctor in 1993. On September 3, 1993, Pearson had another surgery to replace the stent in her bile duct. The stent was replaced several times because of blockage. In April 1994, Pearson appeared to be doing well, and the stent was removed. However, in May 1994, another stricture developed, and Pearson underwent surgery to insert another stent. That stent was removed in November 1995. At the time of trial in 1997, Pearson had not had any further strictures.

Pearson filed a medical malpractice action against Dr. Bridges in April 1995. In March 1997, the case was tried before a jury. The jury ultimately returned a verdict in favor of Pearson and awarded her $755,000 in damages. Dr. Bridges appealed the damages award.[2] The Court of Appeals,

---

1. A stricture is a narrowing of the duct caused by the build up of scar tissue.

2. Dr. Bridges did not appeal the finding of liability.

with Judge Anderson dissenting, affirmed. *Pearson v. Bridges*, 337 S.C. 524, 524 S.E.2d 108 (Ct.App.1999).

Dr. Bridges then filed a petition for certiorari, and the sole issue before this Court is:

I. Did the Court of Appeals, in determining whether the trial judge erred in admitting the evidence of future medical damages in this case, improperly utilize the standard of proof the jury uses to determine whether future medical expenses have been proven?

## LAW/ANALYSIS

Dr. Bridges argues the Court of Appeals erred in utilizing the jury's standard of proof, instead of the trial judge's standard of admissibility, when determining whether the trial judge erred in admitting the evidence of future medical damages. We agree. The Court of Appeals' opinion confuses and intertwines the standard of proof with the standard of admissibility. However, even under the correct standard, the trial judge did not err in admitting the testimony concerning future damages.

██ Pearson's medical expert testified there were four scenarios whereby Pearson could incur future medical expenses:

Scenario One: Continual monitoring of Pearson's condition to discover any more strictures and complications.

Projected Cost: $9,473.78

Scenario Two: If the duct restrictured, another cholangioplasty would need to be performed.

Projected Cost: $20,107.56

Scenario Three: If scenario two failed and surgery was required.

Projected Cost: $38,683.62

Scenario Four: If scenarios two and three failed, a possible liver transplant.

Projected Cost: $237,128.39

Dr. Bridges did not object to Pearson's presentation of testimony and evidence on scenario number one. He did object to

the presentation of the expert's testimony concerning scenarios two, three, and four.[3]

Pearson's expert testified there was a twenty-five to thirty percent chance scenario number two would occur. The expert then testified scenario number three would occur only if the number two stent procedure failed. He further testified if number two and three occurred and failed, Pearson might need a liver transplant. Pearson's other medical expert testified, "to a reasonable degree of medical certainty, Ms. Pearson will not need a liver transplant—that is greater than 51 [percent]."

Dr. Bridges argued at trial, and now argues on appeal, the testimony was inadmissible because Pearson was required to prove the future expenses would "most probably" occur. The trial judge overruled Dr. Bridges' objections, and admitted the testimony.

The majority of the Court of Appeals agreed with the trial court that the evidence was admissible, holding, "the most probable standard required to prove causation is not the standard to be applied in determining the admissibility of evidence of future damages. Rather, the evidence must be beyond speculation or conjecture and reasonably certain to occur." *Pearson*, 337 S.C. at 533, 524 S.E.2d at 113. The Court of Appeals was correct in finding the "most probable" standard is not the standard of admissibility in South Carolina.[4] However, whether future medical expenses are "reasonably certain" to occur is also the incorrect standard to use in determining admissibility. Whether future damages are

---

**3.** There is no dispute that if Pearson incurs these future medical expenses, they would be the proximate result of Dr. Bridges' negligence. The dispute in this case is over the *probability* that these damages will arise in the future.

**4.** The "most probable" standard is the standard required to prove proximate cause. *See Armstrong v. Weiland*, 267 S.C. 12, 225 S.E.2d 851 (1976) ("when the opinions of medical experts are relied upon to establish causal connection of negligence to injury, the proper test to be applied is that the expert must, with reasonable certainty, state that in his professional opinion the injuries complained of *most probably* resulted from the alleged negligence of the defendant"). We reaffirm the requirement that plaintiff must prove defendant's negligence, in probability, proximately caused plaintiff's injuries.

"reasonably certain" to occur is the *standard of proof* for future damages, not the *standard of admissibility*. *Haltiwanger v. Barr*, 258 S.C. 27, 186 S.E.2d 819 (1972) (to recover future damages in a negligence case, the plaintiff must prove the damages are reasonably certain to occur).[5]

The question in this case is whether the evidence was properly admitted, *not* whether the evidence was sufficient to support a verdict including future damages. The Court of Appeals decision confuses these two standards.[6]

 Under current South Carolina law, the standard of admissibility for evidence of future damages is "any evidence which tends to establish the nature, character, and extent of injuries which are the natural and proximate consequences of the defendant's acts . . . if otherwise competent." *Martin v. Mobley*, 253 S.C. 103, 109, 169 S.E.2d 278, 281–282 (1969). "The fact that future medical expenses might conceivably be small and are difficult to estimate would not deprive the plaintiff of the right to have the jury determine whether any award for future medical be made, and if so, what amount." *Kelly v. Brazell*, 253 S.C. 564, 567–568, 172 S.E.2d 304, 306

---

5. The trial judge properly charged the jury on the standard of proof. His charge, in relevant part, stated: "your verdict should include an amount to cover any damages that the evidence shows will be reasonably certain to occur in the future . . . I further instruct you that the existence or amount of damages may not be left to conjecture, speculation or guess." The issue of whether the jury's verdict was supported by the evidence is not before this Court. However, we note the jury returned a general verdict in this case in the amount of $755,000. Dr. Pearson never requested a special verdict form separating the elements of damage, and, therefore, there is no way of knowing whether any allowance was made for future medical expenses. The uncontested actual medical expenses in this case were $197,508.43. The remaining damage award could have been awarded for pain and suffering, future pain and suffering, mental anguish, loss of enjoyment of life, impairment of ability to work, etc. There is simply no way to determine if the jury allocated any money for future medical expenses.

6. The Court of Appeals indicates that *Martin v. Mobley*, 253 S.C. 103, 169 S.E.2d 278 (1969), changed the standard for admissibility of future medical expenses. The question in that case, as in this one, was whether the evidence of future damages was admissible. The earlier cases cited by the Court of Appeals referred to the requirement that future damages must be established with "reasonable certainty" involved the standard of proof. Therefore, the Court of Appeals erred in finding that *Martin* changed the standard of admissibility.

(1970). In *Kelly*, the trial judge charged the jury an award could not be based on speculation and that damages must be proven by the preponderance of the evidence. This charge created a jury question as to whether the need for future treatment had been proven. *See Haltiwanger, supra* (it is the duty of the jury to estimate, as best it can, the future damages which are reasonably certain to be accrued by the plaintiff).

In *Martin, supra,* the doctor testified that his opinion as to the extent of the plaintiff's permanent disability was, "[t]hese patients have a general disability in the neighborhood of ten or fifteen percent disability following this type of surgery." This Court found no error in the admissibility of the testimony since, "[t]he fact that the doctor had not had opportunity to consider whether the plaintiff's permanent disability was more or less than that which generally followed such a condition and operation affected ... only the weight and not the admissibility of the proffered evidence." *Id.* at 109, 169 S.E.2d at 281.

The evidence of the medical expenses of scenarios two, three, and four was admissible. These scenarios tended to establish the extent of Pearson's injuries. *Id.* The fact that Pearson's experts testified that the possibilities of scenarios two, three, and four occurring were 30 percent or less went to the weight of the evidence not its admissibility. *Id.* Whether Pearson proved the expenses were "reasonably certain" to occur so she would be entitled to an award of future damages was a question for the jury to determine. *Haltiwanger, supra.*[7]

### Conclusion

For the foregoing reasons, we **AFFIRM** the decision of the Court of Appeals in **RESULT.**

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.

---

**7.** We note that even if the future damages testimony was inadmissible, Dr. Bridges has failed to prove any prejudice since the jury returned a general verdict. *See* Footnote 4.